JOSEPH MARCELLO, JR., AND ANASTASIA MARCELLO,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2650–62. Filed November 13, 1964.

---

[1] This case is hereby severed from the previously consolidated cases of Carlos and Jacqueline Marcello, docket No. 93913; Vincent and Sadie Marcello, docket No. 2653–62; Anthony and Jeannine Marcello, docket Nos. 2652–62 and 2396–63; Salvador J. Marcello, docket Nos. 2654–62 and 2380–63; and Joseph, Jr., and Anastasia Marcello, docket No. 2650–62.

*deQuincy V. Sutton*, for the petitioners.
*Robert S. Leigh*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioners' income tax for the taxable year 1958 in the amount of $14,210.48 and a 5-percent addition to tax under the provisions of section 6653(a) of the Internal Revenue Code of 1954. Respondent disallowed all business expenses claimed by petitioners in the amount of $1,655 and increased petitioners' taxable income $26,666.66 by including in taxable income a gain on the sale of a capital asset. The adjustments and explanation are set forth in respondent's notice of deficiency as follows:

| | | |
|---|---:|---:|
| Taxable income as disclosed by return | | $37, 585. 89 |
| Unallowable deductions and additional income: | | |
| (a) Expenses incurred in operation of businesses | $1, 655. 00 | |
| (b) Gain from sale or exchange of capital assets | 26, 666. 66 | 28, 321. 66 |
| Taxable income as determined | | 65, 907. 55 |

(a) It has been determined that you are not entitled to the deduction for expenses incurred in operation of businesses in the amount of $1,655.00, as claimed on your return.

(b) It has been determined that you realized a net long-term capital gain from the sale or exchange of capital assets in the amount of $53,333.33, which you failed to take into account in the computation of your taxable income. It has been further determined that you are entitled to a deduction in the amount of $26,666.67 computed in accordance with the provisions of section 1202 of the Internal Revenue Code of 1954.

All of the adjustments are in dispute.

The issues for decision are (1) whether petitioner, Joseph Marcello, Jr., incurred any unreimbursed business expenses in the year 1958; (2) whether petitioners realized taxable gain in 1958 with respect to the sale of an undivided interest in inherited real estate and, if so, in what amount; and (3) whether petitioners are liable for an addition to tax under the provisions of section 6653(a) of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Certain documents were presented to the Court on oral stipulation of the parties and they are incorporated herein by this reference.

Joseph Marcello, Jr., and Anastasia, husband and wife, filed a joint income tax return for the calendar year 1958 on the cash basis of accounting with the district director of internal revenue, New Orleans, La. Petitioners now reside at 2928 Clifford Drive, Metairie, La.

During 1958 Joseph Marcello, Jr. (hereinafter called petitioner), reported income from two sources, the Nola Printing Co. and Holiday Motel, both of which were partnerships. Petitioner used his automobile in connection with his work for the Nola Printing Co. Petitioner visited distributors who sold a racing form sheet prepared and printed by Nola Printing Co. During these trips petitioner would supervise the collection of receipts and also make trips to the bank to deposit partnership funds. The automobile used for this purpose during 1958 was a 1957 Oldsmobile purchased on January 24, 1957, at a cost of $3,087. The Oldsmobile was the only automobile owned or possessed by petitioner and his family. Petitioner also used the automobile to commute to work to the offices of Nola Printing Co.

In his return for 1958, petitioner claimed a deduction in the amount of $283 for automobile expenses and a deduction in the amount of $772 for depreciation of the automobile based on a 75-percent usage for business reasons. In addition, petitioner claimed a deduction in the amount of $600 for miscellaneous travel and entertainment expenses. Petitioner's expenditures were out-of-pocket. He was not reimbursed.

On July 1, 1955, Louisa Farrugia Marcello (hereinafter called Louisa), the widow of Joseph Marcello, Sr., and her nine children filed a petition in the District Court in and for the Parish of Jefferson, State of Louisiana, in connection with succession of the property of Joseph Marcello, Sr., deceased, who died in 1952. That court ordered that Louisa be recognized as the surviving spouse in the community of the deceased, Joseph Marcello, Sr., entitled as such to the ownership of one-half or nine-eighteenths of the property left by the deceased and to a usufruct interest in the other one-half or nine-eighteenths of the decedent's property. The court also ordered that the nine children be recognized as the sole heirs of their deceased father and that each child was entitled to the ownership of an undivided one-eighteenth interest in the property left by the deceased subject to the usufruct vested in the mother. Louisa was born on February 6, 1893.

Included in the inheritance was a certain parcel of land, consisting of approximately 183 acres, designated as tract Nos. 9 and 10, Oakdale subdivision, sec. C, Jefferson Parish, State of Louisiana (hereinafter called tract C). Tract C was valued for estate purposes at $40,000.

On December 26, 1958, tract C was sold in nine separate parcels of approximately 20.333 acres each by Louisa and the nine children.

The purchasers were nine newly organized corporations in which the sellers had no interest. The names of the purchasing corporations were Gems, Inc., Pearl Lands, Inc., Amethyst Lands, Inc., Emerald Lands, Inc., Sapphire Lands, Inc., Garnet Lands, Inc., Topaz Lands, Inc., Ruby Lands, Inc., and Moonlight, Inc. Each of these corporations, organized under the laws of the State of Louisiana, had been initially capitalized for $10,000.

After the sales, James J. Culotta, a residential real estate developer and builder and owner of all the stock of the nine corporations, transferred 50 percent of the shares in each corporation to Joseph Connolly, who had participated in prior residential construction developments with Culotta.

James J. Culotta transferred the 50-percent stock interests in the nine corporations to Joseph Connolly on the promise and understanding that Joseph Connolly would be responsible for raising the necessary financing for the proposed residential development of tract C. No other consideration was exchanged.

Another development project in which James J. Culotta and Joseph Connolly had joint interests about the time of the sale of tract C to the nine corporations had failed.

Each of the newly organized corporations gave, as total consideration, a negotiable promissory note, dated December 26, 1958, in the principal amount of $111,111.11. Each note was secured by special mortgage and vendor's lien in the appropriate deed of sale for the respective 20.333 acres conveyed to such corporation.

Each note was signed in the name of the appropriate corporation by "James J. Culotta, President." Each note provided that payments were to be made in 10 annual installments of $11,111.11 commencing on December 26, 1959. Each note also provided that payments would be paid by the respective corporation to the order of bearer, $111,-111.11, for value received, with interest, payable monthly, at the rate of 6 percent per annum until paid. The notes also included provisions as to the makers' and endorsers' waiver of presentment for payment, demand notice of nonpayment, and protest. The notes further provide for nonwaiver of rights by any delay in the exercise of such rights.

The notes were in default from the due date of the first payment with respect to principal and interest. Except in one instance, which will be described hereinafter, no payment has been made on these notes. Each note also bears the personal endorsement of James J. Culotta.

The acts or deeds of credit sale were signed for the grantors by Carlos J. Marcello, individually, and as agent and attorney-in-fact

for Louisa, Vincent J. Marcello, Peter J. Marcello, Pascal J. Marcello, Joseph Marcello, Jr., Anthony J. Marcello, Salvador J. Marcello, Mary M. Loria, and Rose M. Badalamenti. The power of attorney was dated December 22, 1958, and it appointed Carlos J. Marcello as the true and lawful agent and attorney-in-fact for the mother and the other eight children. Carlos J. Marcello was given the power to sell and deliver, with all legal warranties, tract C to any person or persons, firms, or corporation or corporations, for such price and on such terms and conditions as he might deem fit and proper.

Each of the deeds of sale includes a provision that the purchaser agrees, in the event the promissory note is not paid at maturity, that it shall be lawful for the vendor, or any holder or holders of the note, to cause the property to be seized and sold without demand or service of notice of demand for payment or of notice of procedure and without appraisement, to the highest bidder, payable in cash; and that the purchaser confesses judgment in favor of the vendor or any future holder or holders of the note.

Each of the acts of sale includes the provision that partial release of any one or more of the lots into which the property will be subdivided will be granted by the vendors upon payment towards the balance due on the above-described note of a sum proportionate to the ratio which the lot or lots sought to be released shall bear to the total number of lots into which the property is to be subdivided. Each act also provides that in order to facilitate the development of the property, or for the construction of streets and/or offsite improvements, the vendors will do all and whatsoever may be necessary in order to subordinate the vendor's lien and mortgage therein granted to any mortgage and/or building contract made by the purchaser for the purpose of construction financing of such development.

On November 4, 1959, 10 months after the sale of tract C, the nine notes were pledged on behalf of the Marcello family and their business associates as additional security for a $540,000 indebtedness. The notes were pledged as cumulative collateral for the loan. Other collateral consisted of (1) a first mortgage on certain motel property; (2) second and third mortgages on other property previously mortgaged to the same person for a prior loan; and (3) certain shares of stock of a motel corporation in which the Marcello family held interests. The pledgee made no attempt to segregate the security he held between the loan of $540,000 and the previous loans he had made to the Marcello family or their business associates.

On October 16, 1961, Gems, Inc., sold for $110,000 in cash two tracts of land, consisting of 5.72 acres and 6.53 acres out of its 20.333 acre tract, to the Roman Catholic Church of the diocese of New Orleans. A mortgage release covering approximately 12 acres of the

Gems, Inc., lands was executed on behalf of the Marcello heirs and a release of the pledge to the extent of $71,172.50 was obtained from the pledgee of the Gems, Inc., note.

On May 28, 1962, a Form 1041, U.S. Fiduciary Income Tax Return, in the name of estate of Joseph Marcello, deceased, signed by Carlos Marcello, was filed for the year 1961 with the district director of internal revenue, New Orleans, La., reporting the following:

*Property sold December 26, 1958—credit deed, taxpayer estate received no money in transaction until 1961*

| | |
|---|---|
| Proceeds of sale received in 1961 | $71,172.50 |
| Less: | |
| Pro rata valuation—cost | 12,500.00 |
| Other costs—legal and acctg | 2,000.00 |
| Net reportable | 56,672.50 |

Total acreage—approximately 183 acres.
Market value—date of death $454 per acre.
Total market value—date of death—$12,500.
Estate elects to report on installment basis.
Property sold on credit deed December 26, 1958, to corporations listed below:

| | |
|---|---|
| Gems, Inc | $111,111.11 |
| Pearl Lands, Inc | 111,111.11 |
| Amethyst Lands, Inc | 111,111.11 |
| Emerald Lands, Inc | 111,111.11 |
| Sapphire Lands, Inc | 111,111.11 |
| Garnet Lands, Inc | 111,111.11 |
| Topaz Lands, Inc | 111,111.11 |
| Ruby Lands, Inc | 111,111.11 |
| Moonlight, Inc | 111,111.11 |
| | 999,999.99 |

On July 23, 1963, the deeds of sale were amended *nunc pro tunc* by the nine vendee corporations and Carlos J. Marcello acting as agent and attorney-in-fact for the Marcello family. In the amendments the parties declared that it was their intention at the time the nine sales were made that there be reserved to the vendors the oil, gas, and other mineral rights in the property conveyed in the nine sales, just as though the lands conveyed had been conveyed in one deed. The vendors and vendees declared that the reservation of mineral rights would not be effective as to the properties which were sold by Gems, Inc., to the Roman Catholic Church of the diocese of New Orleans.

Three qualified experts testified during the course of the hearing with regard to the valuation of tract C. Two of the experts testified on behalf of petitioner and one expert on behalf of respondent. Their testimony was received in evidence by the Court. Their respective conclusions as to the value of the land were based in part on a visual

examination of the property, an examination of the official parish records in regard to title and zoning, an examination of comparable properties, and an examination of the sales of comparable property. The value of tract C based in part on the opinion of these experts is set forth in the ultimate findings.

Joseph Marcello, Jr., did not report the sales of his interest in tract C on his Federal income tax return for the year 1958. No election was made on the return under the provisions of section 453, I.R.C. 1954, and the regulations relating thereto, to treat the gains on the sale of the properties under the installment method of accounting.

#### ULTIMATE FINDINGS

1. Petitioner is entitled to a deduction for automobile expenses and depreciation in the amount of $458.13 and a deduction for miscellaneous business travel and entertainment expenses in the amount of $200.

2. The fair market value of the land known as tract C on December 26, 1958, was $1,800 per acre, or a total value of $329,395 for 183 acres.

3. The fair market value of each of the nine negotiable notes of the nine vendee corporations on December 26, 1958, was equal to 33⅓ percent of its stated face value.

4. Petitioner's failure to keep adequate records of his business expenditures and the overstatement of his corresponding deductions claimed on his return for 1958 were due to negligence.

#### OPINION

#### *Issue 1. Business Expense Deductions*

In his income tax return for 1958, petitioner claimed deductions of $1,055 for automobile expenses and depreciation and $600 for travel and entertainment expenditures. All of these were disallowed by respondent. Petitioner also claimed on the return that the automobile was used 75 percent of the time for business purposes.

Petitioner's return for 1958 shows income from two sources, Nola Printing Co. and Holiday Motel, both of which are claimed to be partnerships in which petitioner had an interest.

Petitioner's testimony as to the scope of his business duties and responsibilities was not very specific and the best we are able to glean from the record is that petitioner traveled around the city of New Orleans and vicinity in his automobile picking up receipts from various distributors of the Nola Printing Co.'s racing form sheets. Use of the automobile by petitioner in connection with any business of the

Holiday Motel enterprise was not clear, and we are thus unable to make any findings of fact in this regard.

With respect to petitioner's deductions for the use of his automobile, the evidence as to the use of petitioner's automobile consists of his general and vague testimony about the nature of his business interests and the business usage of the automobile. Petitioner's testimony does not go very far in establishing the amounts of the deductions claimed on his return. However, we do think that some business use has been established and that the issue lends itself to an application of the familiar *Cohan* rule (39 F. 2d 540, 544). Cf. *Stanley* v. *Waldheim*, 25 T.C. 839 (1956), affirmed on another issue 244 F. 2d 1 (C.A. 7, 1957). We have found from the record that petitioner was in a number of business activities and at least in one such activity it was necessary for him to use his personal automobile for business reasons. It likewise appears that the expenses he incurred were not reimbursed by Nola Printing Co. The evidence shows, however, that the automobile was not used exclusively for business purposes. The 1957 Oldsmobile was purchased on January 24, 1957, for $3,087. It was partly used by petitioner to commute to work. To the extent that the automobile was used for family and commuting purposes, the costs are personal expenditures and are not deductible as business expenses. Cf. *Stanley* v. *Waldheim, supra.*

In his income tax return petitioner used a 3-year life for computing depreciation on the automobile and no salvage value was assigned to it. There is nothing in the record to show that the automobile would not have a normal salvage value. Sec. 1.167(a)–1(c), Income Tax Regs. Consequently, using our best judgment in applying the *Cohan* rule, we believe that a net salvage value of $500 should be assigned to the automobile and that the operational costs should be allocated on a basis of 40 percent for business purposes and 60 percent for personal usage. Accordingly, we have found petitioner is entitled to a deduction of $458.13 for 1958 which includes $344.93 for depreciation of his automobile and $113.20 for operational and maintenance expenses.

Similarly, petitioner's miscellaneous travel and entertainment expenses of $600 claimed on the return lack complete substantiation. We are convinced that the amount claimed on the return was merely an estimate. Nevertheless, we feel petitioner has established that he did incur some unreimbursed expenses for these purposes, and we will again apply the *Cohan* rule. Bearing in mind that the lack of substantiation is of petitioner's own making, we find that he is entitled to deduct $200 in 1958 for such business expenditures. In our opinion the scanty evidence presented only by petitioner's somewhat vague and self-serving testimony will not support the allowance of a greater sum.

### Issue 2. Succession Property

The principal issue involved in this proceeding is common to all the children of Joseph and Louisa Marcello. As to this issue, respondent contends that the petitioner and the other Marcello heirs realized a gain upon the sale of real property which should be recognized and taxed at capital gains rates in the year of sale.

The record shows that Joseph Marcello, Jr., Carlos Marcello, Vincent Marcello, Anthony Marcello, and Salvador Marcello were joined by two other brothers, Pascal Marcello and Peter Marcello, two sisters, Mary M. Loria and Rose J. Badalamenti, and their mother Louisa, and sold on December 26, 1958, their undivided interests in tract C. This tract of land had passed by inheritance or succession to such persons upon the death of Joseph Marcello, Sr., in 1952. The succession was confirmed by a judgment entered by the District Court in and for the Parish of Jefferson, Louisiana, on July 1, 1955. The land consisted of approximately 183 acres. It was sold to nine newly organized corporations, with each securing title to approximately 20.333 acres of the original tract. The sellers received nine negotiable interest-bearing promissory notes payable to bearer, each in the principal amount of $111,111.11 (one note from each corporation). The notes were the only consideration for the conveyances. Each note was executed by James J. Culotta, a developer and builder in the New Orleans area, who signed on behalf of the respective corporations. In addition, James J. Culotta individually endorsed each of the nine notes.

All of the sellers appointed Carlos J. Marcello to act as their agent and attorney-in-fact in dealing with the property and it was Carlos who negotiated and consummated the sales acting under the power of attorney. None of the vendors had an interest in the vendee corporations at the time of the sales.

It is respondent's position that: (1) The sellers are required to treat the fair market values of the nine promissory notes as the equivalent of cash in determining the gains realized in 1958 upon the sale of the property; (2) the fair market value of each of the nine notes was equal to its face value, namely, $111,111.11; (3) the total amount of the gain was $959,999.99 since the basis in the undivided property was conceded by the parties to be $40,000; (4) the widow of Joseph Marcello, Sr., Louisa, had an undivided one-half interest in the property and the nine children had undivided one-eighteenth interests therein. Thus, the respondent determined that each of the Marcello children was required to report one-eighteenth of $959,999.99 as a gain from the sale of a capital asset and that such gain should be recognized and included in taxable income for the year 1958.

Petitioner contests the inclusion of the portion of gain allocated to him on the following alternative grounds: (1) That under Louisiana

law Louisa not only had an undivided one-half interest in the property conveyed but also an indefeasible usufruct interest in the remaining one-half interest so that the children, whose interests were subject to the usufruct, did not realize any gain when the property was sold in 1958; (2) that the sale of the property in exchange solely for promissory notes was not a closed transaction in 1958; (3) that the notes had no ascertainable fair market value; (4) that, even if the gains were to be taxed on the sale, the party responsible for reporting the sale was the estate of Joseph Marcello, Sr.; and (5) that a fiduciary income tax return in the name of the estate of Joseph Marcello, Sr., was timely filed in 1962 reporting the transactions on the installment basis.

Since respondent's determinations are presumptively correct, petitioner has the burden of proof with respect to each of these contentions. We agree with petitioner's contention that under Louisiana law, Louisa, the widow of Joseph Marcello, Sr., had an undivided one-half interest in the property and an interest commonly referred to as a usufruct in the remaining undivided one-half of the property. The judgment entered by the District Court in and for the Parish of Jefferson on July 1, 1955, makes this clear. It states:

Mrs. Louisa Farrugia, widow of Joseph Marcello * * * entitled, as such, to the ownership of one-half or nine-eighteenths of the property left by the deceased * * * and to the usufruct of the other one-half or nine-eighteenths * * *

"Usufruct" is defined as a servitude in property and the holder of the usufruct has the right to enjoy the property, its profits, utility, and advantages for life or until remarriage. La. Civ. Code, art. 916. Article 534 of the Louisiana Civil Code provides that usufruct in real estate shall be known as a perfect usufruct, wherein the holder does not have the right to consume or do any act which may diminish or change the substance of the property. A usufruct differs from use in that the latter only provides for the use of property to the extent necessary to support the holder, whereas the usufructuary has the right to all profits and rents and the like irrespective of need. La. Civ. Code, art. 633. Louisiana law also provides that any renunciation of a usufruct interest must be expressed and it cannot be implied from the circumstances. La. Civ. Code, art. 917.

Even if we assume that these principles have been established, it does not necessarily follow that the nine children of Joseph Marcello, Sr., could not and did not convey by deeds of sale whatever interests they may have had in the tract of land. The analogy can be made to common law terminology wherein it can be said that Louisa had a fee simple interest in an undivided one-half interest in the property and something akin to a life estate in the other undivided one-half. The children of Joseph Marcello, Sr., may be considered to have vested remainder interests following and subject to the usufructuary's

interest in one-half of the property, each child having one-ninth of such remaining interest.

As far as the purchasers were concerned, the nine corporations received fee simple interests to a specified number of acres of the original tract. The corporations purchased whatever interests Louisa had and whatever remainder interests the children had. These estates all merged in those corporations.

Petitioner cites several Louisiana cases contending that they stand for the proposition that upon conversion of property subject to a usufruct interest the proceeds must be paid over to the usufructuary. See *Succession of Cardona*, 14 La. Ann. 356 (1859), and *Succession of Singer*, 208 La. 463, 23 So. 2d 184 (1945). In both these cases forced sales were involved to pay the debts of the estate and the cases do not deal with the question as to whose income it is when property is sold at a gain.

We think that, for Federal income tax purposes, the respective interests of the mother and the children must be measured and that each is responsible for his respective share of the gain on the sale in the year of sale.[2] Life interests are subject to taxation upon sale, *May T. Hrobon*, 41 T.C. 476 (1964), as well as remainder interests, *Emily Allen Elfreth*, 15 B.T.A. 147 (1929). The fact that such interests were sold at the same time should not change the incident of the tax. Accordingly, we find that the life interest of Louisa should be determined based on her life expectancy under the provisions of table 1, Income Tax Regs., sec. 1.1014.5. The remainder interests of the children should also be determined under this table, and that factor should be applied to one-half of the fair market value of the notes received on the sale of the property. Petitioner, of course, will only be responsible for one-ninth of the value so determined. There will also have to be an allocation of the uniform adjusted basis of the property between the mother and the nine children, as provided for in Income Tax Regs., sec. 1.1014.4.

It is true that Louisa had a little less than a life interest in the property since the servitude could terminate on remarriage as well as on death. However, in view of her advanced age and the improbability of her remarriage, we have treated her interest as a pure life expectancy. Joseph Marcello, Sr., died in 1952 and we assume Louisa was 60 years old on her nearest birthday. Since the property was not sold until 1958, 5 or more years had elapsed since her husband's death without her remarriage. According to the "Prob-

---

[2] We perceive in this no violence to Louisiana law as we understand it. See and compare art. 561 and art. 617, La. Civ. Code.

ability of Remarriage Tables" of the Actuarial Society,[3] the probability of her remarriage 5 or more years after an age of entry at age 60 is 0.0027. We feel this factor is so remote that we are justified in treating her interest in one-half of tract C as a life estate and subject to evaluation as such under the above-identified regulations. We note that for State inheritance purposes Louisiana measures a usufruct interest in terms of the life of the usufructuary, La. Rev. Stat. sec. 47 : 2405 (1950).

Clearly the petitioner's evidence overcomes the presumptive correctness of respondent's determination that the petitioner had a one-eighteenth interest in the tract of land. He had something less than a one-eighteenth interest, and we believe that by applying the factor indicated in the above-identified table based on the actual age of petitioner's mother that the value of that interest can be established. This can be done in the Rule 50 computation.

Having established to our satisfaction that the value of petitioner's fractional interest can be ascertained, we turn next to whether the acts or deeds of sale conveying the tract of land represented a closed transaction in 1958. The record shows that on December 26, 1958, nine credit sales of property were executed by Carlos J. Marcello conveying nine sections of property to the nine vendee corporations. Carlos acted under the authority of a written power of attorney given to him by all the members of his family who had an interest in the property. The credit sales were executed and delivered and appear to be properly authenticated before a notary, with the U.S. documentary stamps attached thereto. The documents were registered on December 30, 1958, in the conveyance books of the parish of Jefferson, La. In our judgment these facts establish that there was a completed sale and not merely an executory contract contemplating a sale. We do not have a situation where the contracts of sale were incomplete or conditional. In *Commissioner* v. *Union Pacific Railroad Co.*, 86 F. 2d 637 (C.A. 2, 1936), the court said:

A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership.

[3] An American Remarriage Table, 19 Proceedings, Actuarial Society, No. 40, p. 332:

TABLE IV.—*An American remarriage table, yearly probability of remarriage*

| Age at entry | Years elapsed since husband's death | | | | | |
|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 or more |
| 60 | 0.0034 | 0.0082 | 0.0065 | 0.0063 | 0.0038 | 0.0027 |
| 65 | .0031 | .0075 | .0059 | .0058 | .0035 | .0025 |
| 73 | .0019 | .0046 | .0037 | .0036 | .0022 | .0015 |

No remarriages beyond age at entry 73.

Based on the facts presented, we are convinced there was an unconditional sale of the property.

Petitioner argues that we should disregard the form of the transaction which is in the nature of a sale and look to the substance of the transaction which, he says, indicated no real change in the position of the sellers. We disagree. The sellers cast the mold of this transaction and we are not prone under these circumstances to refuse to recognize the acts of the sellers and the buyers.

Next we must determine the amount realized by petitioner on the sale. The sellers made no division of the proceeds of the sale. As we have previously stated, the basis of the property transferred was $40,000. The sellers received in consideration nine negotiable promissory notes from the nine corporations in the principal amount of $111,111.11 each. The notes were secured by a mortgage on the property conveyed and the facts show that the notes were individually endorsed by James J. Culotta.

As a general rule, where property is exchanged for notes, income is realized by a cash basis taxpayer to the extent that the fair market value of the notes exceeds the adjusted cost or other basis of the property. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462 (1933). We do not have a situation here such as was presented in *Nina J. Ennis*, 17 T.C. 465 (1951), where there was merely a contract for the sale of property without the receipt of notes or similar obligations by the seller. In that case we held that the seller was not required to report gain upon the execution of the contract but could properly postpone the reporting of any gain until the basis of the property was recovered from the actual receipt of payments. We think the receipt of negotiable notes in the instant case distinguishes this situation from that presented in *Nina J. Ennis*, *supra*. Nor do we believe that there is any evidence to indicate that the notes were not received in payment but were merely an evidence of the indebtedness. Cf. *Jay A. Williams*, 28 T.C. 1000 (1957). Consequently, our problem is to determine, on the basis of the evidence presented, the fair market value of the notes. We refuse to accept respondent's contention that the notes had a fair market value equal to their face amounts. Petitioner's evidence is sufficient to overcome the presumption of correctness attaching to respondent's determination on this point. On the other hand, we cannot agree with petitioner that the notes had no value. While the evidence relating to the value of the notes is not completely satisfactory and any determination of value is not free from doubt, we have used our best judgment in finding a value for these notes.[4] Ac-

---

[4] Sec. 1.1001–1, Income Tax Regs., provides, in part that the fair market value of property (other than money) received in consideration for a sale or disposition of property will only in extraordinary cases be considered to have no fair market value.

cordingly, we have concluded and found as a fact that the notes had a fair market value of 33⅓ percent of their face value on the date of sale. In reaching this conclusion we have taken into consideration, among others, the following factors:

1. The vendee corporations were thinly capitalized and newly organized.

2. The installment payments of the notes were in default from the date of the first installment and, except for one payment in 1961, payments have not been made.

3. The fair market value of the property securing the notes was $1,800 per acre or a total value of $329,395.

4. The notes were pledged in 1959 by the sellers as additional security for a loan of $540,000.

5. The notes were individually endorsed by James J. Culotta who did not appear to have very much capital at his immediate disposal.

All of these factors tend to establish that the value of the notes was equivalent to one-third of their face value. The sellers were willing to sell their tract of land for notes with a face value of approximately $1 million although the value of the land at that time was only $329,395. This indicates to us that they were willing to assume a high degree of risk on the expectation that development of the land would yield a high return. The use of notes as consideration permitted the developer to use what cash he had available to develop the land. The development did not take place as expected and there were no profits to turn back to the original sellers.

The notes were secured by a first mortgage on the property conveyed. This factor alone clearly shows that the notes had some fair market value. But it is equally clear that the negotiable value of such notes was affected by the fact that the total face amount thereof was over three times the value of the property on the date of sale. Moreover, the individual endorser of the notes was not in a very sound financial position. The vendors never called upon him to make the defaulted payments of the makers (the corporations) and it was necessary for him to give up 50-percent stock ownership in the nine corporations to assure that financing arrangements could be made for the proposed development of tract C. There is also some evidence in the record indicating that another Culotta development project failed soon after the sale of tract C.

As to the value of the property securing the notes, we have reached the conclusion that the land had a value of $1,800 per acre on the date of sale. This is predicated on the testimony of three expert witnesses and certain exhibits received in evidence. It would serve no useful purpose for us to explain in detail just how our conclusion was reached. Suffice it to say that the differences in the opinions of

the expert witnesses did not vary too much. While we have no deep-seated conviction as to what the value of the land may have been on the date of sale, a finding of value is necessary and has been made to the best of our ability.

In summary, we hold that petitioner's gain on the sale is one-eight-eenth of the fair market value of the notes, taking into account the adjusted basis of the property and the value of the mother's usufruct interest.[5]

In our opinion there is no merit to petitioner's contention that the return filed by the estate of Joseph Marcello, Sr., in 1962, electing to report the sale of the land on the installment basis, was timely or binding as to the Marcello children. See *Ackerman* v. *United States*, 318 F. 2d 402 (C.A. 10, 1963).

### *Issue 3. Sec. 6653(a) Addition to Tax*

Respondent determined in his notice of deficiency that petitioner is subject to the imposition of a 5-percent addition to tax under section 6653(a), I.R.C. 1954. The petitioner has the burden of proving that the imposition of the negligence penalty was erroneous.

The failure of petitioner to report the gain realized in 1958 from the sale of his undivided interest in the inherited property was not due to negligence because that issue involves a rather complex legal determination on which there can be an honest difference of opinion. However, the petitioner's overstatement of unreimbursed business expenses was due to negligence since he failed to maintain any records of his expenses. Cf. *Carroll F. Schroeder*, 40 T.C. 30, 34 (1963). Inasmuch as part of the underpayment of tax is due to negligence, the addition to tax under section 6653(a) must be imposed on the entire amount of such underpayment.

*Decision will be entered under Rule 50.*

---

[5] The gain should be computed as follows:

