Carlos and Jacqueline Marcello, et al. [1] v. Commissioner. Marcello v. Commissioner
Docket Nos. 93913, 2650-62, 2653-62, 2654-62.
United States Tax Court
T.C. Memo 1968-268; 1968 Tax Ct. Memo LEXIS 31; 27 T.C.M. (CCH) 1444; T.C.M. (RIA) 68268; November 25, 1968. Filed deQuincy V. Sutton, Greater Mississippi Life Bldg., Meridian, Miss., for the petitioners. Harold Friedman, for the respondent DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: These cases are now before the Court on remand from the United States Court of Appeals for the Fifth Circuit pursuant to the mandate issued on September 8, 1967, and re-issued on January 23, 1968, after a petition for writ of certiorari to the Supreme Court of the United States was denied. In an Opinion filed June 16, 1967, and reported in 380 F. 2d 499, the Court of Appeals, affirming in part, remanded the cases to this *32 Court for further proceedings on one issue. A further hearing was held on June 19, 1968, in New Orleans, Louisiana. The general background of the succession property issue is no longer in dispute, and our findings of fact 43 T.C. 168) with respect thereto were not distrubed by the Court of Appeals. In remanding the cases, the Court of Appeals said 380 F. 2d at p. 508): The taxpayer wishing the benefit of installment reporting must make an election on his return either for the year of the sale or for the year when the first payment is received. The latter time for making the election was approved by Rev. Rul. 65-297. The taxpayers request that this case be remanded so that the Tax Court can apply the new ruling. The Commissioner contends that, despite the new ruling, the taxpayers should be given no relief. The Commissioner suggests that the fiduciary return was filed for a separate taxpayer, the Estate of Joseph Marcello, Sr., and therefore cannot be the means to make an election for the individual taxpayers. There was no express finding as to the effect or purpose of the "fiduciary return." If Carlos filed the return as agent for the *33 individual taxpayers, it may be that they are bound by all that appears on the return. On the other hand, the fiduciary return may have served no significant purpose and may not be binding on the individual taxpayers. In light of the new ruling, we think it proper for the Tax Court to determine the effect of the fiduciary return. [Footnotes omitted.] In order to resolve the remanded issue additional findings of fact must be made. Findings of Fact Carlos Marcello, Joseph Marcello, Jr., Peter Marcello, Anthony Marcello, Vincent Marcello, and Salvador Marcello are brothers and are the sons of Louisa Farrugia Marcello and of Joseph Marcello, Sr., who died in 1952. On July 1, 1955, Louisa and her nine children filed a petition in the District Court of Jefferson Parish, Louisiana, in connection with the succession of the property of Joseph Marcello, Sr. That court ordered that Louisa be recognized as the surviving spouse in the community of the deceased, Joseph Marcello, Sr., entitled as such to the ownership of one-half or nine-eighteenths of the property left by the deceased and to a usufruct interest in the other one-half or nine-eighteenths of the decedent's property. The court *34 also ordered that the nine children, including the petitioners herein, be 1445 recognized as the sole heirs of their deceased father and that each child was entitled to the ownership of an undivided one-eighteenth interest in the property left by the deceased subject to the usufruct vested in their mother. Included in the inheritance was a certain parcel of land consisting of 183 acres designated as Tracts Nos. 9 and 10, Oakdale Subdivision, Section "C," Jefferson Parish, State of Louisiana (herein called Tract C). On December 26, 1958, Tract C was sold in nine separate parcels of approximately 20.333 acres each by Louisa and the nine children. The purchasers were nine newly organized corporations in which the sellers had no interest. The acts or deeds of credit sale were signed for the grantors by Carlos J. Marcello, individually, and as agent and attorney-in-fact for Louisa Marcello, Vincent J. Marcello, Peter J. Marcello, Pascal J. Marcello, Joseph Marcello, Jr., Anthony J. Marcello, Salvador J. Marcello, Mary M. Loria, and Rose M. Badalamenti. A power of attorney was executed by Louisa and by the brothers and sisters of Carlos Marcello on December 22, 1958, which appointed *35 Carlos Marcello as agent with power to sell and deliver Tract C for such price and on such terms and conditions as he deemed fit and proper. The power of attorney dated December 22, 1958, after naming the mother and various brothers and sisters of Carlos Marcello, stated, in pertinent part, as follows: WHO DECLARED, that they do, by these presents, make, name, constitute and appoint, CARLOS J. MARCELLO… to be their true and lawful agent and attorney in fact, for them and in their names, places and stead, specially to grant, bargain, sell, convey, transfer, assign, abandon, set over, and deliver, with all legal warranties, and with full substitution and subrogation in and to all the rights and actions in warranty which they have or may have against all preceding owners and vendors, to any person or persons, firms, or corporation or corporations, for such price and on such terms and conditions as their said agent and attorney in fact may deem fit and proper… * * * APPEARERS FURTHER DECLARED that they hereby further authorize their said agent and attorney in fact to sign and execute the notarial act or acts of sale of such property or any part thereof, to receive and receipt *36 for the sale price thereof, and to give and grant full acquittance and discharge therefor, and to sign and execute any other acts, papers, or documents which may be necessary in the premises, and to do all and whatsoever may be necessary in connection therewith. On November 4, 1959, ten months after the sale of Tract C, the nine notes were pledged on behalf of certain members of the Marcello family and their business associates as additional security for a $540,000 indebtedness. The notes were pledged as cumulative collateral for the loan. On October 16, 1961, Gems, Inc., sold for $110,000 in cash two tracts of land, consisting of 5.72 acres and 6.53 acres out of its 20.333 acre tract, to the Roman Catholic Church of the Diocese of New Orleans. On May 28, 1962, a Form 1041, United States Fiduciary Income Tax Return, in the name of the Estate of Joseph Marcello, deceased, signed by "Carlos Marcello, agent," was filed for the year 1961 with the district director of internal revenue, New Orleans, Louisiana. It is a 1960 form but the year 1960 is crossed out and the year 1961 is typed in. In the block in response to the question "Name of Estate or Trust. Check Whether Estate , Simple *37 Trust , or Complex Trust ," the block "Estate" is clearly checked and the name of "Estate of Joseph Marcello" appears immediately below the checked block. The address of the fiduciary was given as "c/o Leon S. Poirier, Box 647, Hammond, La." The return on line 22 of page 1 claims one exemption of $600, this being the exemption allowable for an estate. The income tax, as reflected in the 1961 fiduciary return as due and owing, is computed on the basis of a taxable estate. Tax of $11,816.47 was paid with the return. The return is signed Leon S. Poirier as preparer with the typed date "4-14-62" appearing after his signature. Attached to the fiduciary return of the Estate of Joseph Marcello for the year 1961 is an Application for Extension of Time to File. The application for extension of time to file was filed in the name of "Estate of Joseph Marcello, c/o Box 647, Hammond, Louisiana." The application requested an extension of time until June 15, 1962, in which to file a fiduciary income tax return, Form 1041, for the calendar year 1961. The application in regard to the amount of tax estimated to be due on the final return indicates "Unknown." The application is dated May 8, 1962, and *38 is signed by Carlos Marcello. Certain initials appearing below the 1446 signature are not clearly legible but appear to be "TRT." Also attached to the 1961 fiduciary return is a page reading as follows: Property sold December 26, 1958 - credit deed, taxpayer estate re- ceived no money in transaction un- til 1961
Proceeds of sale received in 1961
$ 71,172.50
Less:
Pro rata valuation - cost
12,500.00
Other costs - legal and acctg 2,000.00
Net reportable
$ 56,672.50
Total acreage - approximately 183 acres.
Market value - date of death $454 per acre.
Total market value - date of death - $12,500.
Estate elects to report on installment basis.
Property sold on credit deed Decem- ber 26, 1958, to corporations listed below:
Gems, Inc.
$111,111.11
Pearl Lands, Inc.
111,111.11
Amethyst Lands, Inc.
111,111.11
Emerald Lands, Inc.
111,111.11
Sapphire Lands, Inc.
111,111.11
Garnet Lands, Inc.
111,111.11
Topaz Lands, Inc.
111,111.11
Ruby Lands, Inc.
111,111.11
Moonlight, Inc. 111,111.11
$999,999.99
The notice of deficiency addressed to Carlos and Jacqueline Marcello for the year 1958 was mailed on January 27, 1961. The notices of deficiencies *39 addressed to the other petitioners for the year 1958 were mailed on April 6, 1962. None of the petitioners reported the sales of their interest in Tract C on their Federal income tax returns filed for the year 1958 nor were the sales or any gain from the sales reported in any individual Federal income tax returns for any other year. No election relating to the sale of Tract C was made by any of the petitioners on their 1958 Federal income tax returns, on any amended or delinquent returns for 1958, or on any individual returns for any subsequent years. Because of the pledge of the notes of $999,999.99 on the loan of $540,000 previously described herein, Carlos Marcello considered that his mother had acquired an interest the nature of which is not clear in certain stock or property which was acquired with the funds obtained with that loan. A gain was realized on the sale of this property in 1964. None of that gain was reported by any of the individual petitioners. The gain was reported in its entirety by Louisa Marcello on an individual return prepared for her at the direction of Carlos. The money received in the transaction was deposited in an account in the name of Louisa. *40 Subsequent to 1961, certain payments were received on the notes received in the 1958 sale of Tract C. None of these amounts was reported by any of the petitioners in any individual return. Carlos Marcello stated that if returned they would have been reported on a return in either the name of the Estate of Joseph Marcello or in the name of Louisa Marcello. On or about May 17, 1965, a claim was filed on behalf of the Estate of Joseph Marcello, deceased, requesting a refund of the amounts paid with the fiduciary return previously described for the period January 1, 1961, to December 31, 1961. A refund was requested in the amount of $11,923.62 (with interest thereon). A refund in the amount of $14,686.79 was made to Estate of Joseph Marcello on or about April 22, 1966. The refund included all tax paid with the fiduciary return plus interest thereon of $2,786.07. The check of $14,686.79 was endorsed by Carlos Marcello and deposited by him to the bank account of Louisa Marcello. Ultimate Findings 1. The fiduciary return for 1961 filed in the name of the Estate of Joseph Marcello, deceased, was a return filed on behalf of a separate entity or person and not on behalf of the petitioners *41 and their brothers and sisters. 2. The election in the estate tax return was an election to report gain on a sale on behalf of what was believed to be a separate entity or person. 3. Petitioners made no installment election in any return for the year of sale (1958) in regard to their taxable gain on the sale of Tract C. 4. The individual petitioners made no installment election in any return for any other year to report their gain on their 1958 sale of Tract C. 5. The purported election made in the tax return for 1961 in the Estate of Joseph Marcello was subsequently waived or abandoned. 6. The election made in the fiduciary tax return is not binding on the petitioners individually. 1447 Opinion We must determine (1) whether Carlos Marcello was acting for the petitioners individually when he filed the fiduciary return (Form 1041) for the Estate of Joseph Marcello, deceased, in the year 1961, (2) whether Carlos had the authority to act for the individual petitioners, (3) whether he acted properly to accomplish what he sought to accomplish and (4) whether an election made in the 1961 fiduciary return for the "estate" was a qualified installment election covering the *42 1958 sale of realty by the petitioners individually. Petitioners contend that the 1961 fiduciary return should be regarded as a return in the name of "Carlos Marcello, Agent," although it was filed in the name of the "Estate of Joseph Marcello, Deceased," that Carlos and other members of the family intended the fiduciary return to be for the whole family and for each member of the family and that each member intended to be bound by its content. While some of the rather vague, general answers by the family members who testified might tend to support petitioners' contentions, we are persuaded that a studied analysis of all the testimony compels a different conclusion. It appears from this record that the mother and brothers and sisters of Carlos had no actual knowledge or intent regarding the 1961 fiduciary return or the election included therein. They could hardly have personally intended to be bound by something about which they had absolutely no knowledge. Thus, if they were bound, it had to be because of acts clearly intended by Carlos to bind each of them pursuant to specific authority granted by them. The difficulty with petitioners' position in this respect is that Carlos *43 did not believe that he or his brothers and sisters had any income to report or any election to make. Since the return and the election on their face represent a return and an election of a fiduciary for an estate and not a return or an election for a group of separate but unnamed individuals, the argument of petitioners proceeds on the theory that form should be totally disregarded; more specifically, on the premise that it was their intent or at least Carlos' intent and purpose in filing the fiduciary return that it would constitute an individual return and an individual election for each of the petitioners, and on the additional premise that an election can properly be made by an agent for an undisclosed or improperly described principal. To find a binding election made for each of the petitioners it would first be necessary to find that Carlos had authority to act in this respect on behalf of each of them. Petitioners recognize this and accordingly contend that the fiduciary return was executed pursuant to a power of attorney dated December 22, 1958. A careful reading of this written instrument shows the power to be a special or limited one, the purpose being to permit the *44 sale and transfer of a particular tract of real estate. The power was carefully drawn for that purpose. Filing tax returns and tax elections on behalf of the various persons who granted the power was not within the scope of the particular power of attorney. Moreover, petitioners did not comply with the administrative regulations relating to returns made under power of attorney. See sections 1.6061-1(a) and 1.6012-1(a)(5). Since Carlos executed and filed the fiduciary return in the name of the Estate of Joseph Marcello, petitioners must establish that his purpose or intention in filing the return was not consistent with the form of the return and that the name on the return is a clerical misnomer. Carlos' purpose in filing that return and his intention at the time of filing are important and must be judged in the period immediately prior to the filing of the return and not by what would have been done if the facts were different than they were assumed or believed to be by Carlos and the other petitioners. As previously indicated, it is evident that Carlos in filing the fiduciary return did not purport or intend to act on behalf of any of the individual petitioners. One thing that *45 does seem clear in the testimony is that Carlos acted on the advice of an attorney and a certified public accountant, and that his intent in filing the fiduciary return was based on the advice given to him. Looking at the form the return took and presuming, as we do, that there was no intent to mislead or misrepresent, we conclude that the advice was that the gain was taxable to a separate entity or, at least, the gain was not taxable to petitioners individually. The selection of the type of return used, the claim of an exemption on that return, the name placed on the return, and the specific use of the word "estate" in making the election are all significant. It is inconceivable that a tax attorney or a certified public accountant would not readily distinguish between a separate entity 1448 and a group of separate individuals, particularly when, as here, the return was prepared after notices of deficiencies had been mailed to the individual petitioners for the taxable year 1958, including in the individual notices the gain on the sale of Tract C. The wording used in the fiduciary return cannot be considered inadvertent or inconsequential. That wording shows that the fiduciary *46 return was filed for and the election made on behalf of a separate taxable entity. [2]
Whether such an entity existed or not is of no moment. The point is that Carlos believed it existed. He believed that the gain on the sale of the Tract C property was reportable by a separate entity or by a person or persons other than the individual petitioners and it was his intention or purpose in filing the fiduciary return to file for and make an election on behalf of that entity whose name appears in the tax return. He acted on what he believed. Other evidence supports the view that the parties believed, though incorrectly, that the gain was reportable by a separate entity. For example, one of the petitioners' arguments in the case prior to the original Tax Court opinion was that the party responsible for reporting the sale was the Estate of Joseph Marcello *47 (or Louisa Marcello) and that a fiduciary return was filed in the name of the estate since that was the proper party to file the return. See 43 T.C. at p. 177. It is plain from the statements made in the original briefs filed by petitioners in 1964, including their requested findings of fact, that the impression of the parties was that the individual petitioners had no gain to report and, therefore, no election to make. In these circumstances we do not see how the election made in the fiduciary return could be their election. If the return was filed for an estate which is a separate entity or for Louisa Marcello, the fact that it was mistakenly filed for an estate under a mistaken notion of whose gain it was does not change the nature of the election. An election by A is not converted into an election for B if it be found that the gain was actually that of B rather than A. Subsequent acts tend to confirm the absence of an election by the individual petitioners. No gain has ever been reported on any individual return of any petitioner. Carlos indicated that if anything was received as payment on the "notes" they would have been reported either by the estate or by Louisa. *48 No amounts were so reported. A refund claim was filed on the tax paid on the fiduciary return and all the tax plus interest was refunded. The check was endorsed by Carlos and deposited in Louisa's account. Section 453, Internal Revenue Code of 1954, provides for the return of income from a sale or other disposition by a taxpayer of real property on the installment method under regulations prescribed by the Secretary or his delegate. Section 1.453-8, Income Tax Regs., provides that a taxpayer who sells or disposes of real property must set forth in his income tax return for the year of sale the gross profit under the installment method. Rev. Rul. 65-297, 1965-2 C.B. 152, on which petitioners rely, provides, in pertinent part, as follows: Circumstances under which the Revenue Service will recognize as valid the election to report income from certain sales on the installment method, if such election was not made on a timely filed original return for the year of sale. * * * * * * In the disposition of cases, if, in good faith, the taxpayer failed to exercise the installment method election to report income from sales *49 of real property and casual sales of personal property on a timely filed original return for the year of sale, the Service will recognize as valid, elections made under the following circumstances: 1. Those cases where the sale took place in a taxable year ended before December 18, 1958, if the election was made in the return for the year the first payment from the sale was received. December 18, 1958, is the date the present regulations were effective. 2. Those cases where election of the installment method was made on an amended return for the year of sale not barred by the statute of limitations or the operating of any other law or rule of law if the facts indicate no election inconsistent with the installment election had been made with respect to the sale. 3. Those cases where the election had been made on a delinquent return for the year of sale. 1449
However, an installment election made after the due date (including extensions thereof)for filing the return for the taxable year of the sale will not be recognized as a valid election if the assessment or collection of any portion of the tax for any taxable year resulting from the application of the installment method *50 to such sale is prevented by the operation of the statute of limitations or of any other law or rule of law. Howbert v. Norris, 72 Fed. (2d) 753 (1934). Petitioners fail to qualify under the provisions of Rev. Rul. 65-297. The first circumstance is not applicable because the sale took place on December 28, 1958, or subsequent to December 18, 1958, the critical date. The second and third circumstances are inapplicable since neither an amended return nor a delinquent return was filed for the year of sale. The fiduciary return which was filed is clearly not a delinquent or amended 1958 return of any of the individuals, and the sale was made after the effective date of the new regulations which requires election in the year of sale. Furthermore, the election was made after the normal expiration period for the year 1958 and was made after the issuance of statutory notices of deficiencies to each of the individuals asserting the taxability of their gain. In the face of a determination by respondent that the gain was taxable to each of the individuals, the election was made on behalf of an estate. At best, the fiduciary return is a delinquent return of a *51 separate entity for a year other than the year of sale. An installment election made after the due date for filing the return for the taxable year of the sale is not recognized under the revenue ruling where recognition acts to the detriment of the respondent or where an inconsistent election has been made. A recognition of the installment method at this time in regard to the 1958 sale will act to the detriment of respondent. And the acceptance and depositing by Carlos of a refund check which refunded the entire amount of tax plus interest thereon paid originally with the fiduciary return represent acts inconsistent with petitioners' current claim for 1958 installment treatment. The acceptance and deposit of that check after the filing of a claim constitute a waiver of the purported election. In view of these circumstances, we think our original conclusions with respect to this issue were correct and are not affected by a proper application of Rev. Rul. 65-297. Decisions will be entered accordingly. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Joseph and Anastasia Marcello, Jr., docket No. 2650-62; Vincent and Sadie Marcello, docket No. 2653-62; and Salvador J. Marcello, docket No. 2654-62.↩
2. The fiduciary return as prepared is consistent with the theory originally adopted by the petitioners in these cases, i.e., they individually had no gain to report. The return is inconsistent with their present theory which proceeds from this Court's determination that gain on the 1958 sale is taxable to petitioners individually.↩