T.C. Summary Opinion 2001-19


UNITED STATES TAX COURT


LEONA PAYTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9035-99S.          Filed February 27, 2001.


Leona Payton, pro se.

<u>James A. Kutten</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties in the following amounts for the following taxable years:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1995 | $1,830 | $357.00 |
| 1996 | 2,051 | 410.20 |
| 1997 | 1,875 | 375.00 |

After concessions by petitioner,[1] the issues for decision are: (1) Whether petitioner is entitled to dependency exemption deductions for several individuals for the years 1995, 1996, and 1997; (2) whether petitioner is entitled to head of household status; (3) whether petitioner is entitled to an earned income credit for 1996; and (4) whether petitioner is liable for accuracy-related penalties for 1995, 1996, and 1997.

Some of the facts in this case have been stipulated and are so found.  The stipulation of facts and the exhibits received into evidence at trial are incorporated herein by this reference. At the time the petition was filed, petitioner lived in St. Louis, Missouri.

Petitioner lived in a 2-bedroom apartment with a roommate from 1995 through 1997.  During these years, petitioner assisted,

---

[1]    Petitioner concedes that she received $309 wage income from Incarnate Word Hospital and $42 interest income during 1995 which she failed to report on her 1995 Federal income tax return. Petitioner further concedes that she did not provide more than half of the total support for her mother, Mattie Barnes, during 1995, and stepfather, John Jones, during 1995 and 1996.

as needed, a number of individuals, mostly family members, with food, clothing, shelter, and on some occasions, with financial aid. Petitioner is a licensed practical nurse and worked full-time at South Point Hospital during the years in issue.

After the death of petitioner's mother, Mattie Barnes (Ms. Barnes), in January 1996, Areail Pruitt[2] (Areail), petitioner's youngest sister, had difficulties coping with the loss of their mother. Areail's children, petitioner's niece and nephew, Racquelle Givens (Racquelle) and Rafael Givens (Rafael), respectively, stayed with petitioner from the time of Ms. Barnes' death until after completion of the school year in June 1996. Both Racquelle and Rafael were minors during the years in issue.

Petitioner's older brother, Preather Pruitt (Preather), age 41 in 1995, had undergone 2 heart surgeries prior to 1995 and was disabled during the years in issue. He lived in his own apartment but could not work due to his disability. He received approximately $400 per month as disability payment from his former employer. Preather's monthly rent was approximately $300 per month which did not include utility expenses. Petitioner frequently assisted Preather financially. In 1996, Preather received Medicaid benefits in addition to the $400 monthly

---

[2] The family name "Pruitt" is spelled "Preuitt" on petitioner's 1997 Federal income tax return. For consistency, we shall use the "Pruitt" spelling for purposes of this opinion.

disability payments. However, it is unclear from the record whether Preather continued to receive Medicaid benefits in 1997.

Preather's son, Jamal Pruitt (Jamal), age 15 in 1997, lived with petitioner during 1997. Petitioner claimed Jamal as a "fosterchild" on her 1997 Federal income tax return.

Petitioner's younger brother, Johnnie Payton (Johnnie), age 31 in 1995, lived with petitioner or his mother, Ms. Barnes, until her death in 1996. Johnnie did not have his own residence until 1997, when, with the financial help of petitioner, he moved into a cousin's basement. Johnnie was not gainfully employed during the years in issue and had no other sources of income.

Reginald Givens (Reginald), age 36 in 1997, is the brother of petitioner's brother-in-law, and the father of Racquelle and Rafael. He is not related to petitioner by blood or marriage. Reginald lived with petitioner for about 8 months in 1997 and was not gainfully employed.

Petitioner reported wage income of $24,685, $26,563, and $25,653 in 1995, 1996, and 1997, respectively. On her 1995 Federal income tax return, petitioner claimed dependency exemption deductions for Mattie Barnes, John Jones, Preather Pruitt, and Johnnie Payton. On petitioner's 1996 Federal income tax return, petitioner claimed dependency exemption deductions for Racquelle Givens, Rafael Givens, Johnnie Payton, and John Jones. On her 1997 Federal income tax return, petitioner claimed

dependency exemption deductions for Reginald Givens, Jamal Pruitt, Johnnie Payton, and Preather Pruitt. Petitioner also filed as head of household on her 1995, 1996, and 1997 Federal income tax returns and claimed an earned income credit on her 1996 Federal income tax return.

Respondent disallowed the dependency exemption deductions because petitioner failed to establish that she was entitled to the exemption for each individual claimed. As a result of the disallowance, respondent further determined that petitioner's filing status was single, not head of household, disallowed the earned income credit, and imposed accuracy-related penalties.

Dependency Exemption

Section 151(c) allows a taxpayer to deduct an annual exemption amount for each dependent of the taxpayer. A "dependent" is defined in section 152(a) as an individual "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer)".

In order to prevail, petitioner must show by competent evidence that the following requirements are satisfied: (1) The dependent's gross income must be less than the amount of the exemption amount for the taxable year in which the deduction is claimed (the gross income requirement); (2) the dependent must

satisfy the definition of a "dependent" within the meaning of section 152(a) (the relationship or member of household requirement); and (3) petitioner must furnish more than half of the dependent's total support (the support requirement).  See secs. 151(c)(1)(A); 152(a).  All requirements must be satisfied for each individual claimed by petitioner.

Each claimed individual satisfies the definitional requirement of "dependent" within the meaning of section 152(a) under the relationship test (as nieces, nephews, or brothers) or the principal place of abode requirement (i.e., Reginald for 1997).  Therefore, the next issue is whether petitioner furnished more than one-half of each dependent's total support.

The term "support" includes food, shelter, clothing, medical and dental care, education, etc.  Sec. 1.152-1(a)(2)(i), Income Tax Regs.  The amount of total support may be reasonably inferred from competent evidence.  See Stafford v. Commissioner, 46 T.C. 515, 518 (1966).  However, where the amount of total support of a dependent during the taxable year is not shown and cannot be reasonably inferred from competent evidence, then it is not possible to conclude that the taxpayer has contributed more than one-half.  See Blanco v. Commissioner, 56 T.C. 512, 515 (1971); Fitzner v. Commissioner, 31 T.C. 1252, 1255 (1959).

Although we find petitioner's testimony credible that she contributed to each claimed individual's support, the record

based solely on her testimony is incomplete.  She has not kept records of how much she spent on the claimed individuals.  Unfortunately, petitioner was unable to reconstruct the dollar amount of the total support for Racquelle, Rafael, Jamal, Reginald, and Preather.  The claimed dependents did not testify at trial and there is little information in the record as to contributions, if any, they have made towards their own support or gross income.  In the cases of the minor dependents, Racquelle, Rafael, and Jamal, petitioner testified that other sources of income were available but failed to establish the amounts.[3]  Also, as to Preather, the record reflects that he received disability and Medicaid payments, but petitioner failed to establish the amount of her contributions during the years in issue.

Petitioner has made a valiant effort to help support, in any way she was able, close individuals and family members who have gone through difficult times.  She was able to give sustenance to these individuals, and herself, by working diligently as a practical nurse, and, at times, taking cash advances on her credit card or loans.  Petitioner worked towards reducing her

---

[3]     Racquelle and Rafael's mother, Areail, was employed during 1996 as a claims adjuster for General American.  Also, the record is incomplete as to the income of Jamal's mother, Patricia Butler, and her contributions, if any, towards the total support of her son.

debt by "paying them back, yearly, yearly, yearly***" Although we sympathize with petitioner and acknowledge that she clearly provided some support to each individual claimed, we cannot find, on the basis of the record, that petitioner provided over half of the total support for most of the claimed dependents as required by section 152. Because petitioner failed to establish the total amount of support from all sources, we are unable to conclude that petitioner provided more than one-half of the total support for Racquelle, Rafael, Jamal, Reginald, and Preather. Therefore, we hold that petitioner is not entitled to section 151 dependency exemption deductions for the taxable years 1995, 1996, and 1997 as to Racquelle, Rafael, Jamal, Reginald, and Preather.

However, as to Johnnie, we believe petitioner's testimony regarding Johnnie's inability to contribute to his own support during a time when he was trying to "beat a habit". We find that petitioner did contribute more than half of his support, and, therefore, petitioner is entitled to claim section 151 dependency exemption deductions for Johnnie in 1995, 1996, and 1997.

Head of Household Status

According to the relevant part of section 2(b), an individual shall be considered a head of household if such individual (1) is not married at the close of the taxable year and (2) maintains as her home a household which constitutes for more than one-half of the taxable year the principal place of

abode of a person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151.

In this case, petitioner was not married at the close of 1995, 1996, or 1997. Petitioner is not entitled to dependency exemption deductions for the years in issue as to Racquelle, Rafael, Jamal, Reginald, and Preather as stated above. However, she is entitled to dependency exemption deductions as to Johnnie for 1995, 1996, and 1997. Johnnie lived with petitioner, and, at times, with their mother during 1995. She further testified that her home was "a place he knew he had*** to lay his head***" until 1997 when Johnnie moved into a relative's basement. Johnnie lived with petitioner more than one-half of the year during 1995 and 1996 to satisfy the requirement of section 2(b), but he did not live with petitioner more than one-half of the year during 1997. Therefore, on the basis of the record, we hold that petitioner is entitled to file her 1995 and 1996 Federal income tax returns as head of household.

Earned Income Credit

Respondent made a computational adjustment disallowing petitioner's claimed earned income credit.

The relevant parts of section 32 provide that an individual is eligible for the earned income credit if: (1) The individual's principal place of abode is in the United States for more than

one-half of the taxable year; (2) the individual is between the ages of 25 and 65 before the close of the taxable year; and (3) the individual is not an allowable dependent claimed by another taxpayer in the same calendar year.  Petitioner has met all of the above requirements.  However, petitioner is subject to the limitations of the earned income credit under section 32(a)(2). Because petitioner's income was greater than $9,230 in 1995, $9,500 in 1996, and $9,770 in 1997, petitioner is not allowed to claim the credits.  See sec. 32(a)(2).

Accuracy-Related Penalty

The last issue for decision is whether petitioner is liable for accuracy-related penalties pursuant to section 6662(a). Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment that is attributable to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  Negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985)(quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. 43 T.C. 168 (1964) and T.C. Memo. 1964-299).  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  See sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  No penalty shall be

imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. See sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and good faith within the meaning of section 6662(c) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

At trial, petitioner established that she acted in good faith with respect to the 1995, 1996, and 1997 claimed dependency exemption deductions. We find petitioner's testimony to be credible as to her support of certain individuals during difficult periods in their lives. Petitioner's lack of compliance was not based upon bad faith, but rather on a misunderstanding of the requirements of the dependency exemption deduction. We also find petitioner credible in her intentions to comply with complex Federal income tax requirements by seeking out assistance from the Internal Revenue Service. On the basis of the record, we hold that petitioner is not liable for accuracy-related penalties under section 6662(a) for the years in issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.