WILLIAM T. HEYWOOD AND DOROTHY M. HEYWOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heywood v. Commissioner
Docket Nos. 20886-92, 14142-93
United States Tax Court
T.C. Memo 1994-575; 1994 Tax Ct. Memo LEXIS 581; 68 T.C.M. (CCH) 1240; November 22, 1994, Filed *581 Decisions will be entered for respondent. William T. Heywood and Dorothy M. Heywood, pro sese. For respondent: Michael Lackner. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1989, 1990, and 1991 in the amounts of $ 4,336, $ 5,777, and $ 3,698, respectively, and additions to tax under section 6662(a) [1] in the amounts of $ 849.20, $ 1,155, and $ 740 for the years 1989, 1990, and 1991, respectively. The issues for decision are: (1) Whether petitioners are entitled to deduct losses claimed in each of the years here in issue from activities of William T. Heywood as a golfer and as a claimed investment adviser; and (2) whether petitioners are liable for additions to tax under section 6662(a) for the taxable years *582 1989, 1990, and 1991. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Santa Monica, California, at the time of the filing of the petitions in these cases, timely filed their joint Federal income tax returns for the taxable years 1989, 1990, and 1991. During the taxable years 1989 through 1991, petitioners deducted as business expenses payments relating to Mr. Heywood's (petitioner's) activities as a golfer and as a claimed investment adviser. After his retirement from the insurance business, where he worked for 21 years, petitioner began playing golf with the idea of someday competing professionally. In order to qualify as a professional in petitioner's age category, the "super seniors", a golfer was required to either qualify through a "qualifying school", which is a tournament in which golfers compete for a tour card, or by qualifying for individual tournaments. The qualifying school and qualifying play for tournaments are open to anyone who pays the qualifying fee. The super senior age group starts at age 60. Golfers attempting to qualify in the super senior tour must also compete in tournaments *583 against the younger senior players, an age category starting at 50. Each year, 4 golfers out of approximately 100 or 130 qualify in the qualifying school, and only 3 or 4 golfers out of over 100 qualify for an individual tournament. Beginning in 1986 and throughout the years at issue, petitioner attempted to qualify in only one qualifying school. During these years, he attempted to qualify in approximately three to four individual tournaments per year, but failed to qualify in any of the tournaments which he entered. In fact, petitioner never completed a round of golf in any tournament. This was due in part to the "unwritten rule" of qualifying play for tournaments, that once a golfer realized that qualifying was unlikely, the golfer would withdraw to expedite the qualifying process for the other golfers. Petitioner always withdrew from the qualifying play due to poor performance, which he attributed to the intense pressure of the attempt to qualify. Petitioner's golf scores when he played other than in qualifying play were "near par". The only golf organization to which petitioner belonged during the years at issue was the United States Golf Association, whose members include *584 both professional and amateur golfers. Petitioner has never belonged to the Professional Golfers' Association of America (the "PGA"), or any other professional golf organization. Petitioner has never entered an apprenticeship program with the PGA. Petitioner was never a member of any golf course for the years at issue. Petitioner has also never been employed as a professional golf instructor, nor has he worked as a golf professional, or as an assistant to a golf professional for a golf course. Petitioner received no instruction from a golf professional in any of the years at issue. On Schedules C attached to their Federal income tax return for each of the years here in issue, petitioners reported no income from, but deducted various expenses in relation to, petitioner's golfing activity. The expenses deducted included automobile expenses, home office deductions, equipment repairs, supplies, travel, meals, utilities, and deductions for publications. The resulting loss shown on the Schedule C was deducted on the income tax return for each year. Petitioner kept no formal books or records. He did keep certain receipts for expenditures. A number of the receipts he kept were *585 for cash expenditures that did not disclose the items purchased or were merely receipts from automatic teller machines. Petitioner organized these receipts chronologically and not by category of expense. Many of the receipts were kept in plastic bags and shoe boxes. Petitioner kept no record of any kind of the payments to the winners in tournaments for which he attempted to qualify. During the years at issue, petitioner also deducted expenses from a claimed activity as an investment adviser. Such expenses were similar to those taken for his golfing activity, and the records he kept were receipts similar to those kept in connection with his golfing activity. Petitioner opened a bank account (the bank account) with a deposit of $ 5,000 to use for his claimed activity as an investment adviser. Petitioner hoped to meet potential clients through his expected status and increased exposure as a professional golfer. Petitioner never had any clients, nor did he ever attempt to contact prospective clients. Petitioner did not maintain a record, diary, or listing of potential clients. The only transactions involving the bank account were yearly withdrawals of $ 10 redeposited to prevent *586 the bank account from becoming inactive. Petitioner also never purchased any dividend- yielding securities. Petitioner never earned any income from any activity as a claimed investment adviser, except for interest earned on the bank account. During the years at issue, Mrs. Heywood earned income as a legal secretary, and Mr. Heywood received a pension and Social Security payments. The income from these sources received by petitioners in each year was in excess of the combined deductions claimed in that year by petitioners as expenses of a claimed investment adviser activity and petitioner's golfing activity. Respondent in the notice of deficiency disallowed the losses claimed by petitioners from petitioner's golfing and claimed investment adviser activities. OPINION Section 183 provides, in general, that an individual will not be allowed a deduction in excess of receipts, other than for expenses otherwise deductible, attributable to an activity if such activity is not engaged in for profit. Section 183(c) defines an activity not engaged in for profit as any activity that is neither a trade or business for purposes of section 162, [2] nor engaged in for the production of income *587 within the meaning of section 212(1) or (2). [3]
Whether a taxpayer is engaged in an activity with the objective of making a profit is a question of fact to be resolved on the basis of all the surrounding circumstances. Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981). In determining whether an activity is engaged in for profit, more weight is accorded to objective facts than to the taxpayer's *588 mere statement of intent. Keanini v. Commissioner, 94 T.C. 41, 46 (1990) (citing sec. 1.183-2(a), Income Tax Regs.). The burden of proving the requisite objective is on the taxpayer. Rule 142(a); Sabelis v. Commissioner, 37 T.C. 1058, 1062 (1962). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, but rather the facts and circumstances of the case taken as a *589 whole are determinative. Keanini v. Commissioner, 94 T.C. at 47. Petitioner in this case kept no regular books or records with respect to his golfing activity. He kept receipts of amounts he claimed to be expenses of his golfing activity, but many merely showed a cash expenditure, and the receipts were not organized by category of expense showing for what the amount was spent. Petitioner kept no record of the prize money available for each of the tournaments. Petitioner had never worked in any capacity as a professional golfer. He failed to complete a single round of golf during any qualifying tournament or qualifying school. Petitioner never took lessons from a professional golfer, nor did he ever operate a golf pro shop, teach golf, or attend any sort of business course for golfers. Petitioner attempted to qualify in only a few tournaments each year. Petitioner testified that he was better than an average golfer, but also said his score generally was "near par", without giving his definition of "near par". Petitioner never made a profit from his golfing activity. In fact, he never had any income whatsoever from golf in the 3 years at issue *590 or during the 2 years prior thereto. Petitioners' combined incomes from other sources in each year here in issue was in excess of the combined losses claimed by petitioners from petitioner's golfing activity and claimed activity as an investment adviser in each year. Elements of personal pleasure were present in petitioner's golfing activity. Petitioner does not meet the standard of a "for profit" activity with respect to his golf under any of the criteria set forth in section 1.183-2(b), Income Tax Regs.
Petitioners rely on Kimbrough v. Commissioner, T.C. Memo. 1988-185, in support of their claim that petitioner's golfing activity constituted an activity engaged in for profit. Kimbrough is distinguishable from this case for a variety of reasons. Mr. Kimbrough was a member of the PGA and was, therefore, a professional golfer. During his apprenticeship process he had served as an assistant to a professional at a golf course. He attended a business course for golfers and assisted a professional golfer from whom he took lessons. His training included course work and practice in a variety of areas, including the operation of a golf shop where *591 he taught golf methods and techniques. Mr. Kimbrough not only had income from his golfing activity, but that income increased steadily over the years involved in his case. None of these facts are present in the instant cases. This record as a whole clearly shows that petitioner did not engage in his golfing activity with the objective of making a profit in any of the years here in issue. The record shows that petitioner never attempted to contact prospective clients with respect to his claimed investment adviser activity. He kept no information on prospective clients, never approached anyone concerning a possible investment opportunity, never received income from any investment adviser activity except for interest income on the bank account, and never made a profit from his claimed investment adviser activity. Based on this record and our discussion of the law in connection with the conduct of petitioner's golfing activity, we hold that petitioner did not engage in the claimed investment adviser activity with the objective of making a profit in any year here involved. In fact, we find no evidence that petitioner even engaged in an investment adviser activity. Section 6662(a) *592 imposes an addition to tax on that portion of the underpayment of tax attributable to negligence or disregard of rules or regulations. Negligence is defined as a "lack of due care or failure to do that which a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Negligence includes any failure to make a reasonable attempt to comply with the law. Sec. 6662(c). Respondent's determination that petitioners' underpayment was due to negligence is presumptively correct, and petitioners have the burden of showing that they were not negligent. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Petitioners have made no showing that any part of the deficiencies determined herein was not due to negligence. Petitioners have offered no evidence to show that they made a reasonable attempt to determine whether the losses *593 from petitioner's golfing and claimed investment adviser activities were properly deductible. In fact, it is apparent from the record that petitioners were negligent in their failure to keep proper records with respect to petitioner's golfing and claimed investment adviser activities. Based on the record in these cases, we sustain the additions to tax under section 6662(a) for negligence as determined by respondent. Decisions will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
3. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩