DENVER W. MCDONALD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McDonald v. Commissioner
Docket No. 5458-93
United States Tax Court
T.C. Memo 1995-359; 1995 Tax Ct. Memo LEXIS 363; 70 T.C.M. (CCH) 271; August 2, 1995, Filed *363 Decision will be entered under Rule 155. For petitioner: Roderick L. MacKenzie. For respondent: Kathryn K. Vetter. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined a deficiency in and an addition to petitioner's 1989 Federal income tax in the amounts of $ 25,414 and $ 5,083, respectively. After concessions, the issues remaining for our consideration are: (1) Whether petitioner had unreported rental income; (2) whether petitioner correctly reported the gain from the sale of rental real estate; (3) whether petitioner is entitled to additional itemized deductions; (4) whether petitioner is entitled to a general business credit carryforward; and (5) whether petitioner is liable for the addition to tax under section 6662(a). [1]
FINDINGS OF FACT [2]
*364 Petitioner resided in Sacramento, California, at the time the petition in this case was filed. Petitioner has been a licensed real estate agent since 1975. In 1976 through 1980, petitioner was a limited partner in three partnerships: Denver Restaurants, Nolan Associates, and Maynard Associates. For each partnership, Richard Maynard was the general partner. Petitioner held a 16.20-percent interest in each partnership. The partnerships engaged in the submarine sandwich shop business, operating eight such shops in or near Sacramento, California. The shops' main office was located on Watt Avenue in Sacramento. Mr. Maynard and Bill McDonald, petitioner's father, operated an accounting firm, Maynard & McDonald, also located on Watt Avenue. The partnerships purchased their sandwich shops from Sam Granite (or his corporations) for approximately $ 500,000, giving Mr. Granite a note for $ 400,000. This note was guaranteed individually by Bill McDonald, Richard Maynard, Linda Maynard, J. Michael Nolan, Eleanore Nolan, Denver Associates, L.P., and Nolan Associates, L.P. The sandwich shops experienced financial difficulties, and, in early 1980, they were closed. Consequently, the partnerships *365 could not meet their obligations to creditors. For 1989, petitioner claimed a $ 4,788 general business credit carryforward as a passthrough item from the partnership. In February 1983, petitioner purchased a duplex residential rental property, located on Marty Way (Marty Way property), for $ 91,500. On February 7, 1983, petitioner's mother, Mary Charles McDonald, drew a cashier's check for $ 20,165 payable to both petitioner and herself. The deed to the Marty Way property was listed solely in petitioner's name. Petitioner reported all rental income and expenses of the property, including depreciation, on his own tax return. The rent on each unit was $ 495 per month, with petitioner receiving a $ 200 security deposit for each unit. Petitioner sold the Marty Way property in 1989. On his 1989 tax return, petitioner computed the gain on the sale of the Marty Way property as follows: Selling Price
$ 155,000 Less: Selling Costs
(11,638)
Adjusted Selling Price
$ 143,362 Less: Costs
$ 91,540
Roof
5,690
Other
26,828
(124,058)
$ 19,304 Add: Prior Depreciation
23,739 Gain on Sale
$ 43,043 Although petitioner calculated a $ 43,043 gain on the *366 sale of this property, he attributed $ 28,387 of the gain to his mother (which she reported on her 1989 Federal income tax return), and $ 14,656 to himself. Petitioner testified that his records, which included detail on his "other costs", were kept in his former real estate office that burned down in November 1992. On petitioner's 1989 Form 4797, Sales of Business Property, he reported the entire sales price ($ 155,000) as the amount that he realized from the sale. On his Form 4797, petitioner did not reveal his belief that his mother owned part of the Marty Way property; rather, he treated her portion of the sales price as an expense of the sale. Mary Charles McDonald, however, reported the gross proceeds amount that petitioner had calculated for her on a detailed schedule ($ 50,687). In 1989, Ms. McDonald had a $ 19,110 capital loss carryforward available to offset the $ 28,387 gain that petitioner allocated to her; she reported a total 1989 tax liability of $ 589. As part of the sale of the Marty Way Property, the monthly rent for each unit was to be prorated between petitioner and the buyer. In 1989, petitioner received $ 1,683 of rental income, yet he reported only $ 134. On *367 petitioner's 1989 Federal income tax return, he claimed $ 14,928 of interest expense. Petitioner incurred and was entitled to deduct $ 15,943 of interest. Furthermore, although he claimed $ 860 of automobile license tax expense, petitioner incurred only $ 715 of such expenses. Petitioner is not required to recognize a State income tax refund of $ 1,046 in 1989. OPINION Section 61(a)(5) states that "gross income means all income from whatever source derived, including * * * rents". Respondent determined that petitioner received rents in excess of those reported on his 1989 return. Petitioner did not produce any books or records regarding the Marty Way property rental receipts, and thus failed to meet his burden. Rule 142(a). Consequently, he failed to show that the rental income allocated to him in the Marty Way property closing statement was not income from rents. Petitioner conceded on brief that he should have reported $ 703 as rental income. However, we have found that petitioner failed to report $ 1,549 of prorated rental income in 1989. Therefore, respondent's determinations are sustained. Next, we must decide if petitioner correctly reported the gain from the Marty Way property *368 sale. Respondent determined that petitioner was the sole owner of the property at the time of sale, and it was concluded that petitioner incorrectly calculated his gain. In support of this, respondent directs us to the lack of formal evidence showing that Mary Charles McDonald had any interest in or involvement with the property. Conversely, petitioner claims that the $ 20,165 check that Mary Charles McDonald drew for herself and petitioner represented her contribution toward the property as co-owner. Petitioner has the burden of proof as to this issue. Rule 142(a). Petitioner claims that his mother contributed $ 22,300 to the property; however, the only evidence linking petitioner's mother to the Marty Way property is a February 7, 1983, cashier's check for $ 20,165 payable to both petitioner and his mother. Ms. McDonald does not recall why this check was drawn for petitioner, nor does she remember that any portion of the property was to be allocated to her. However, Ms. McDonald did recall that she often made loans to her son, and, in fact, she believed that this was one such occasion. Petitioner possessed all the incidents of ownership with respect to this property, including *369 having the deed listed solely in his name. See Hulter v. Commissioner, 91 T.C. 371, 388 (1988). Moreover, we note that, by petitioner's allocating part of the gain to his mother, he could avoid a substantial part of the tax, because his mother had sufficient capital loss carryforwards with which to absorb most of the gain. Accordingly, we find that petitioner's mother either made a gift to petitioner, or she lent him the money. There is no evidence that she received or expected any ownership interest in the property. "Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed -- the actual benefit for which the tax is paid." Corliss v. Bowers, 281 U.S. 376, 378 (1930). Petitioner calculated his gain by considering selling costs. After analyzing the property's closing statement, we find that petitioner incurred $ 10,449 of selling expenses regarding the property. Petitioner also included $ 26,828 of "other costs" in calculating his gain. Petitioner asserts that these other costs included: Painting of the interior and exterior; tile and linoleum work; purchase of *370 a new refrigerator and stove; purchase of new curtains on french doors; carpeting; floor refinishing; driveway work; and fence replacement. Petitioner kept any records of these expenditures in his real estate office that burned down in November 1992. Petitioner testified that he made all of these improvements. Although he was unable to provide records, which petitioner testified were kept in his real estate office and destroyed in a November 1992 fire, we do believe that he made some improvements about which he testified. Having considered petitioner's testimony and the likelihood that some expenditures were repairs rather than capital improvements, we find that, in addition to $ 5,690 of roof repair costs, petitioner incurred the following "other costs" as capital expenditures: Exterior painting, $ 2,900; interior painting, $ 1,500; purchase of a new refrigerator, $ 600; purchase of a new stove, $ 500; purchase of new carpet, $ 800; refinish floors, $ 800; and replace fencing, $ 1,200. See Power v. Commissioner, T.C. Memo. 1990-583 (if records are destroyed, this Court may accept credible testimony of a taxpayer to substantiate deductions). These expenditures *371 were properly included in the basis of the Marty Way property or are otherwise allowable as offsets in determining the amount realized from the sale. Sec. 1016. Next, petitioner claims that he is entitled to itemized deductions in excess of those reported on his 1989 Federal income tax return. In accordance with our findings of fact, we hold that petitioner is entitled to an additional $ 1,015 of interest expense. Conversely, we find that petitioner overstated his automobile license tax expense by $ 145. Petitioner claimed a $ 4,788 general business credit on his 1989 Federal income tax return. Section 38 allows a credit against tax for general business credit carryforwards. Sec. 38(a)(1). Petitioner argues that he was entitled to such a carryforward in 1989. Respondent contends that petitioner provided no substantiation, invoices, or documentation that would show the purchase price of any of the assets for which a credit was claimed (other than one vehicle). Petitioner has the burden of showing that he is entitled to the general business credit. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Segel v. Commissioner, 89 T.C. 816, 842 (1987). *372 Petitioner's prior year returns are statements of his position, and he may not rely solely on them to prove that he is entitled to a general business credit. Roberts v. Commissioner, 62 T.C. 834, 839 (1974); Sherwood v. Commissioner, T.C. Memo. 1988-544. Petitioner provided no evidence to substantiate the purchase of property for which a credit could be claimed. Furthermore, he furnished this Court with no documents or other proof for us to decide whether any allowable credits were absorbed in previous years. Petitioner has not met his burden; therefore, we find that he is not entitled to a general business credit carryforward in 1989. [3]
Petitioner also claims that he is entitled to and should have taken a net operating loss deduction from his sandwich shop partnerships. Regarding this issue, the parties agreed to be bound by McDonald v. Commissioner, T.C. Memo. 1994-607. *373 In McDonald, this Court found that the taxpayer had provided no documentation showing that he was entitled to deduct such losses. Similarly finding no such evidence here, and in accordance with that decision, we find that no such losses are deductible. Finally, respondent determined that petitioner is liable for the additions to tax for negligence or intentional disregard of rules or regulations, or for substantial understatement of income tax. Sec. 6662(a). Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299. Petitioner considered many capital expenditures when he calculated the gain on his Marty Way property. We have found that petitioner did make several improvements to this property. Moreover, in November 1992, a fire destroyed a substantial part of petitioner's supporting documentation. Although we did not allow all of petitioner's claimed capital expenditures, *374 we find that his failure to produce these records was not negligent, and that he did not act unreasonably in taking those expenditures into account when calculating his gain. Conversely, regarding the portion of gain that petitioner allocated to his mother, we have found no substantive or formal evidence showing her ownership interest. Thus, to the extent that he allocated some gain to his mother, we do find that he was negligent. Petitioner also claimed a general business credit carryforward which we found was unsubstantiated. Regarding this credit, petitioner failed to keep adequate records, and he provided no supporting documentation. Therefore, we find that petitioner was negligent with respect to the portion of his 1989 tax deficiency resulting from the erroneous business credit carryforward. Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code in effect for the year at issue. Rule references are to this Court's Rules of Practice and Procedure.↩
2. The stipulation of facts and exhibits are incorporated by this reference.↩
3. See McDonald v. Commissioner, T.C. Memo. 1994-607↩.