T.C. Memo. 1999-293


UNITED STATES TAX COURT


FATAI O. AND MARY KING, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10781-98.                        Filed September 1, 1999.



Fatai O. and Mary King, pro se.

Carol-Lynn E. Moran, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined a deficiency of $11,450
in petitioners' 1994 Federal income tax and an accuracy-related
penalty pursuant to section 6662(a)[1] of $2,290.  The notice of

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
(continued...)

deficiency was based on petitioners' joint amended 1994 income tax return filed on December 6, 1996.

The issues for decision are: (1) Whether petitioners are entitled to the following deductions claimed on Schedule C: Robbery from PNC Bank, $9,540; lottery shortage, $11,744; car and truck, $3,120; repairs and maintenance, $4,944; (2) whether petitioners had unreported gross income of $11,667 from the sale of a newsstand and unreported interest income of $227; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a).[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Wyndmoor, Pennsylvania, at the time they filed their petition.

During 1994, Mr. King owned King's Newsstand. Pennsylvania State lottery tickets were sold at King's Newsstand. As a retail distributor of Pennsylvania State lottery tickets, Mr. King was required to set up a lottery bank account and to submit winning

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners have not objected to respondent's determinations regarding self-employment tax and a deduction resulting from that tax.

lottery tickets to lottery headquarters for verification. Once a ticket has been verified, either the money is wired to the retailer's lottery account to pay the winning ticket or the Pennsylvania State lottery writes a check directly to the winner.

During 1994, Mr. King made a $9,540 cash deposit into his lottery account with PNC Bank (PNC), and he subsequently learned that his account was not credited with the deposit. As a result, Mr. King hired an attorney and filed a complaint in 1994 against PNC to recover the $9,540 missing deposit.[3] On June 27, 1995, a panel of arbitrators found in favor of Mr. King. Shortly thereafter, PNC appealed the arbitration award. On March 12, 1996, the Common Pleas Court of Philadelphia, Pennsylvania, ruled in favor of Mr. King and ordered PNC to reimburse him. As a result, Mr. King was reimbursed in 1996.

During 1994, petitioners owned a Hyundai automobile. Mr. King used the Hyundai to commute to work daily.

During 1993, Mr. King sold a newsstand located at 139 North West Corner of Chelten Avenue in Philadelphia, Pennsylvania, for $40,000. Under the terms of the sales agreement, Mr. King received a $5,000 deposit in 1993 and monthly payments of $972.22 with zero percent interest for 36 months. As a result, Mr. King received 12 monthly installment payments of $972.22 each for a

---

[3]Because of a typographical error in the stipulation, "$9,450" should be "$9,540."

total of $11,666.64 in the taxable year 1994.  Also during 1994,
petitioners received $160 of interest income from Mellon Bank and
$67 of interest income from PNC.

Petitioners timely filed their joint 1994 Federal income tax
return.  On December 6, 1996, petitioners filed a Form 1040X,
Amended U.S. Individual Income Tax Return, for the taxable year
1994.[4]

## OPINION

Schedule C Deductions

The first deduction at issue involves what petitioners
claimed was a robbery loss of $9,540.  The claimed $9,540 loss
actually arose from a cash deposit that Mr. King made to his
lottery account with PNC that was not properly credited to his
account.

Deductions are a matter of legislative grace, and the burden
of showing the right to deductions is on the taxpayer.  See Rule
142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

---

[4]We note that petitioners had confusing and inconsistent
positions regarding the amounts and their sources of gross income
in their initial income tax return and their amended tax return.
For instance, in their initial income tax return, under Schedule
C, petitioners indicated that they had $30,000 of gross receipts
from the sale of cigarettes, lottery (tickets), and newspapers.
Yet, petitioners indicated that their cost of goods sold was
zero.  Furthermore, in their amended return, on Schedule C,
petitioners reported that Schedule C gross income was generated
from "other income", which consisted entirely of $48,460 in
lottery commissions.  See appendix.

Section 165(a) allows a deduction for any loss sustained in the taxable year. However, before a loss may be claimed as a deduction, it must be evidenced by a closed or completed transaction. See United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398, 401 (1927); Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 807 (1974), affd. 521 F.2d 786 (4th Cir. 1975); Applegate v. Commissioner, T.C. Memo. 1992-156; sec. 1.165-1(b), Income Tax Regs.[5] If a claim for reimbursement exists and there is a reasonable prospect of recovery, the loss is not deductible until it can be ascertained with reasonable certainty whether reimbursement will be received. See Ramsay Scarlett & Co. v. Commissioner, supra; sec. 1.165-1(d)(2)(i) and (3), Income Tax Regs. In determining whether a taxpayer had a reasonable prospect for reimbursement, the fact that the taxpayer has filed a lawsuit to recover the loss gives rise to an inference that he or she had such a prospect. See Ramsay Scarlett & Co. v. Commissioner, supra at 812-813; see also Dawn

_____

[5]Sec. 1.165-1(b), Income Tax Regs., provides:

To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except as otherwise provided in section 165(h) and §1.165-11, relating to disaster losses, actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

v. Commissioner, 675 F.2d 1077 (9th Cir. 1982), affg. T.C. Memo. 1979-479.

Mr. King hired an attorney and filed a claim against PNC in 1994 for PNC's failure properly to credit his account.  Mr. King was prosecuting his claim with reasonable diligence in 1994, and a substantial possibility existed that he would recover his money from PNC.  A panel of arbitrators ruled in favor of Mr. King in 1995, several months before he filed an amended tax return for 1994.  Mr. King's claim was ultimately upheld by the Common Pleas Court of Philadelphia, Pennsylvania, and he was reimbursed by PNC.  Because Mr. King had a reasonable prospect of recovery in 1994, petitioners are not entitled to the loss deduction on their amended joint return for that year.

The second deduction at issue involves an alleged $11,744 lottery shortage.  Petitioners argue that Mr. King was responsible for paying off two winning lottery tickets with his own money because one of his newsstand employees had lost the winning tickets.  Normally, the Pennsylvania Bureau of State Lottery pays for winning lottery tickets by wiring money to the retailer's lottery account.  If the retailer pays the winning ticket before the money is wired, then the retailer is reimbursed from the lottery.  Petitioners produced two checks drawn on Mr. King's lottery bank account.  Mr. King testified that those checks were paid to two lottery winners because a former

employee, whose last name he could not recall, accepted the winning lottery tickets from the two customers and then lost the tickets. Each check was for $7,500.

The question is whether the purpose of the checks was for lottery winnings and, if so, whether Mr. King received the normal reimbursement from the State Lottery Bureau. Petitioners did not explain the difference between the amount of the claimed deduction and the total amount of the two checks. Neither check indicates that it represents lottery winnings. One check contains a notation that it was for "Lic #4617(731) Pattison Newsstand". The other check contains a notation that it was for "Lic #16170(43) Oxford Newsstand". Except for Mr. King's testimony,[6] we have no other evidence of the purpose of the checks or the source of the money used to cover the checks. On the basis of this record, we find that petitioners have not proven that they are entitled to this deduction.

---

[6]We are not bound to accept Mr. King's testimony at face value if it is improbable, unreasonable, or questionable. See Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Davis v. Commissioner, 88 T.C. 122, 140-141 (1987), affd. 866 F.2d 852 (6th Cir. 1989); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).

The third deduction concerns claimed car and truck expenses of $3,120.[7]  The substantiation requirements under section 274 apply to passenger automobiles.  See secs. 274(d)(4), 280F(d)(4)(A)(i).[8]  Normally, deductions for automobile expenses are not allowed unless the taxpayer substantiates the deduction through either adequate records or the taxpayer's own detailed statement that is corroborated by sufficient evidence.  See sec. 274(d)(4).  At a minimum, the taxpayer must substantiate:  (1) The amount of the expense, (2) the time and place the expense was incurred, and (3) the business purpose for an expenditure or use with respect to listed property.  See sec. 274(d); sec. 1.274-5T(b)(6)(i), (iii), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

---

[7]Petitioners claimed expenses of $3,120 for car and truck, $1,025 for insurance, and $2,935 for legal and professional services in their amended return but nothing for the same items in their original return.  On the other hand, petitioners claimed $250 for advertising expenses, $500 for office expenses, and $17,500 for supplies in their original income tax return, while claiming no deduction for advertising or office expenses and only $171 for supplies in their amended return.  See appendix.

[8]Sec. 274(d)(4) provides, in part, that "No deduction or credit shall be allowed * * * with respect to any listed property (as defined in section 280F(d)(4))".

Sec. 280F(d)(4)(A)(i) provides that the "term 'listed property' means * * * any passenger automobile".

The "adequate records" standard requires that a taxpayer maintain an account book, diary, log, statement of expense, trip sheet, or other similar record that contains entries of expenditures made at or near the time of the expenditure. In addition, a taxpayer must supply documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure. See sec. 1.274-5T(c)(2)(i), (iii), Temporary Income Tax Regs., 50 Fed. Reg. 46017, 46019 (Nov. 6, 1985). Alternatively, taxpayers who are unable to satisfy the adequate records requirement are still entitled to a deduction for expenses that they can substantiate with other corroborative evidence. See sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

The only evidence offered to substantiate these expenses was receipts for automobile repair bills totaling $2,708.48, a copy of a $500 check dated January 8, 1995, with a notation on the check indicating that it was used for car insurance on a "1986 Mercury Topez [sic]", and Mr. King's self-serving testimony. Since Mr. King testified that the expenses he seeks to deduct relate to the Hyundai, the check relating to the Mercury Topaz is irrelevant.

Mr. King testified that he used the Hyundai to pick up newspapers but argues on brief[9] that he sold only Pennsylvania State lottery tickets at his newsstand.[10] Additionally, Mr. King could not recall whether he owned one or two automobiles in 1994 but testified that his family never used the Hyundai to visit the doctor, go to church, or even to pick up groceries. Finally, Mr. King testified that the Hyundai was used to commute to work daily. We sustain respondent's disallowance, since petitioners did not meet their burden of proof by providing either adequate records or a detailed statement corroborated by sufficient evidence to substantiate their deduction.

The fourth deduction concerns claimed repair and maintenance expenses in the amount of $4,944. To document these repair and maintenance expenditures, Mr. King presented three invoices with an aggregate value of $5,950. However, petitioners claimed only a $4,944 deduction and offered no explanation for the variance. One of the invoices, a $4,500 invoice for concrete work, was not admitted into evidence because petitioners failed to provide it to respondent before trial, in accordance with this Court's

---

[9]"The petitioners sells [sic] only Pennsylvania Lottery [tickets] at the Newsstands. No candy, cigarettes or Newspapers were sold at the Newsstands."

[10]Petitioners' amended return reported that Schedule C income was entirely from lottery commissions, while their original return reported the source of Schedule C income from "Newsstand - selling cigarettes, lottery [tickets], newspapers."

pretrial order to produce all relevant documents.[11]  Even if the invoice had been admitted into evidence, it would not have been given weight since the date on the invoice appeared to have been altered, and there was a question as to whether the same invoice was used in a prior taxable year.

The second invoice, for $820, was from an awning company. The invoice had been altered.  The name and street address of a person other than petitioners were crossed out and Mr. King's name was printed above it, and the year of the invoice was also partially crossed out.  As evidence that he actually paid for the $820 awning, Mr. King produced various checks amounting to $2,172.26 and made payable to Discover and American Express,[12]

---

[11]Before trial, petitioners were served with the Court's Standing Pre-Trial Order requiring them to exchange any documents that they expected to be used at trial with respondent at least 15 days before the first day of the trial session.  Subsequently, and on two separate occasions, respondent requested that petitioners provide business record entries, canceled checks, invoices, receipts, and other documentation to establish amounts they paid for various Schedule C expenses and to verify amounts they received from the installment sale of a newsstand.  Because of petitioners' failure to provide any of the requested documentation, this Court ordered petitioners to comply with respondent's request for production of documents.  We note that petitioners are not entirely unfamiliar with the Tax Court Rules of Practice and Procedure.  They filed a petition pro se in this Court in 1996.  In that case, this Court found petitioners' records unreliable, and the Court of Appeals for the Third Circuit affd. without published opinion.  See King v. Commissioner, T.C. Memo. 1998-69, affd. without published opinion ___ F.3d ___ (3d Cir., May 12, 1999).

[12]The checks payable to Discover totaled $1,836.78, and the
(continued...)

with a handwritten note on each check stating "newsstand awning". Mr. King did not give any breakdown of those amounts, nor did he provide a monthly statement from Discover or American Express which presumably would have provided a breakdown of all the charges on his Discover and American Express cards.

Finally, Mr. King produced an invoice from an acrylics company for approximately $630 that does not contain a description of what was sold. According to Mr. King, the invoice represented the purchase of new candy racks, which are still being used. However, in petitioners' brief, they argue that no candy was sold at his newsstand. We also note that petitioners' amended return reports that Schedule C income was entirely from lottery commissions. Petitioners have not established their entitlement to these claimed repair and maintenance deductions.[13]

Unreported Income

The next issue is whether petitioners had unreported income of $11,667 from the sale of a newsstand and unreported interest income of $227. Petitioners argue that the proceeds from the sale of the newsstand were not omitted from their return, but

---

[12](...continued)
check payable to American Express was for $335.48.

[13]We note that even if the expenses were substantiated, they appear to be capital in nature, which would require capitalization, absent a sec. 179 election.

rather, were incorrectly reported as $14,067 in rental income in petitioners' amended tax return.[14]

In general, section 61(a)(3) requires gains derived from the sale of property to be included in gross income. Petitioners failed to prove that they reported the $11,667 by incorrectly including it in the $14,067 reported as rental income on their amended return. Other than Mr. King's testimony that he made a mistake, petitioners offered no evidence or explanation for the difference in the amount realized from the newsstand sale during 1994 and the amount included under rental income. Petitioners offered no evidence that they had a basis in the newsstand other than zero. Therefore, we uphold respondent's determination that petitioners had additional gross income of $11,667.[15]

Petitioners stipulated that they received $160 of interest income from Mellon Bank and $67 of interest income from PNC Bank during the taxable year 1994. Since these amounts were not reported on their 1994 amended return, we sustain respondent's adjustment increasing petitioners' income by these amounts.

---

[14]Petitioners did not report any rental income in their original income tax return.

[15]Petitioners do not argue, nor do they provide sufficient facts to establish, that the gain on the sale of the newsstand qualifies for capital gain treatment, or that the gain would not be subject to recapture under sec. 1245 or 1250.

Accuracy-Related Penalty

The final issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1994. Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to a taxpayer's negligence or any substantial understatement of income tax. See sec. 6662(a) and (b)(1) and (b)(2).

Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. The Commissioner's determination that a taxpayer was negligent is presumptively correct, and the burden is on the taxpayer to show lack of negligence. See Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Marcello v. Commissioner, 380 F.2d 499, 506-507 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). An understatement of tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000. See sec. 6662(d)(1)(A)(i) and (ii). The accuracy-related penalty will apply unless petitioners can demonstrate that there was reasonable cause for the underpayment

and that they acted in good faith with respect to the underpayment.  See sec. 6664(c).

Petitioners failed to maintain adequate records. Petitioners presented no evidence to show that they acted with reasonable cause or good faith.  Petitioners did not meet their burden of proving that they were not negligent and that there was no substantial understatement of income tax.  Respondent's deficiency determination of $11,450, which we uphold, exceeds 10 percent of the amount required to be shown on the return and is more than $5,000.  We, therefore, hold that petitioners are liable for an accuracy-related penalty of 20 percent.

Decision will be entered for respondent.

APPENDIX

|  | Original Return | Amended Return |
|---|---|---|
| Gross receipts or sales | $30,000 | -0- |
| Cost of goods | -0- | -0- |
| Gross profit | 30,000 | -0- |
| Other income | -0- | $48,460 |
| Gross income | 30,000 | 48,460 |
|  |  |  |
| Expenses: |  |  |
| Advertising | $250 | -0- |
| Car & truck | -0- | 3,120 |
| Insurance | -0- | 1,025 |
| Legal & professional service | -0- | 2,935 |
| Office expense | 500 | -0- |
| Repairs & maintenance | 5,000 | 4,944 |
| Supplies | 17,500 | 171 |
| Taxes & licences | 200 | 910 |
| Travel | 2,500 | -0- |
| Meals & entertainment[1] | 1,000 | -0- |

[1]Net of 50-percent limitation.