T.C. Memo. 2014-227

UNITED STATES TAX COURT

BRIAN K. BRINKLEY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7367-13.                     Filed October 30, 2014.

<u>William R. Leighton</u>, for petitioner.

<u>Roberta L. Shumway</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a $369,071 deficiency in petitioner's Federal income tax for 2011 and a $48,036.15 penalty under section 6662(a).  The issues for decision are whether petitioner properly reported all of the income he received in relation to a merger transaction as long-term capital gain income and whether he is liable for the penalty.  Unless otherwise indicated, all

**[\*2]** section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. One document of the record has been sealed at the request of a nonparty, Google Inc. (Google). This sealed document was not required to resolve this case and thus will remain sealed in accordance with section 7461(b)(1) and Rule 103(a)(7). Petitioner resided in Texas at the time his petition was filed.

Petitioner was one of the founders of Zave Networks, Inc. (Zave), which conducted business under the name "Zavers". When Zave started up in 2006, petitioner, who holds undergraduate degrees in mathematics, computer science, and statistics as well as an M.B.A., was hired as an independent contractor to oversee the technology side of the business. He remained a contractor until August 16, 2010, when he became a salaried employee as Zave's chief technology officer. In addition to monetary compensation, petitioner received restricted stock grants from Zave for helping to achieve its technological and economic goals.

**[*3]**    As a founder, petitioner initially owned 9.8% of Zave's stock.  Petitioner made elections under section 83(b) with respect to all stock grants issued to him by Zave that were not immediately vested.  However, each time investors infused capital into Zave, petitioner's interest was diluted, and he threatened to leave the company should his interest ever fall below 3%.  When additional capital was infused into Zave in or around late 2008, Zave, in deference to petitioner's concern, agreed to increase his stock ownership by issuing to him restricted stock grants to facilitate his minimum 3% interest request.  Nevertheless, by fall 2011 petitioner's equity interest in Zave had fallen to less than 1% even though he held 1,340,000 shares of common stock--200,000 of which were not yet vested.

Earlier in 2011, Google began merger negotiations with Zave to acquire the latter as a wholly owned subsidiary (merger).  Petitioner did not participate in negotiation of the merger.  As part of the merger, Google required that petitioner turn over all his intellectual property related to Zave and become a Google employee.

In explaining the merger to petitioner, Zave's chairman of the board of directors and another director informed him that Zave was being sold for $93 million and that his stock holdings were worth approximately $800,000.  Petitioner disagreed with the latter amount because, in keeping with his desire to

[*4] have at least a 3% ownership interest in Zave, he expected to receive 3% of the cash consideration paid by Google.

To address his concern, Zave sent to petitioner a letter agreement dated July 25, 2011 (letter agreement I). Under the heading "Compensation", letter agreement I provided that upon completion of the transaction, Zave would pay petitioner a lump-sum amount "equal to (i) 3.1/93rds of the aggregate cash consideration paid by Google * * *, less (ii) the aggregate amount received by" petitioner as consideration for all his shares of Zave stock. Petitioner was not comfortable with this language, did not sign letter agreement I, and asked his accountant Mark Richter to review it.

Richter had tax attorneys Luis De Luna and Leonard Leighton, whom Richter worked for at that time, review letter agreement I. De Luna and Leighton advised petitioner that the use of the term "compensation" within letter agreement I indicated that the funds he would receive from the merger would be ordinary income contrary to his objective of having only capital gain income from the sale of stock. Petitioner engaged De Luna and Leighton to negotiate the terms of an agreement with Zave on his behalf. However, while petitioner did inform Richter and his tax attorneys that he held some equity interest in Zave, he

**[*5]** did not disclose to them the number of shares he owned or their approximate value of $800,000.

During negotiations with petitioner's tax advisers, Zave sent a modified letter agreement dated August 1, 2011, the terms of which petitioner did not accept. Zave then sent to petitioner a final letter agreement dated August 27, 2011 (letter agreement II). Under the heading "Consideration", letter agreement II provided that, following the merger, Zave would pay petitioner as consideration $3,100,000 of the $93,000,000 purchase price offered by Google in exchange for "(i) all of * * * [petitioner's] shares, warrants and options of * * * [Zave stock] and (ii) * * * [petitioner's] execution of a Key Employee Offer Letter and Proprietary Information and Inventions Assignment Agreement with Google as required in the Merger Agreement". Letter agreement II also provided that petitioner would "not be entitled to the Consideration, except for any amount you would be entitled to receive in exchange for your shares * * * in the absence of this Agreement, if you do not comply with the terms of the Merger Agreement".

Under the heading "Internal Revenue Code Compliance including I.R.C. § 409A", letter agreement II provided that payment from the merger "will be subject to all adjustments, tax withholdings, if any, and escrow as required in the Merger Agreement. You agree that the Consideration is to be received by you only at the

**[*6]** time(s) and to the extent of the definitive agreements to be entered into with Google Inc. in the event of a Google Liquidation Event."

Under the heading "Governing of Law and Forum", letter agreement II provided that "[t]his Agreement and all disputes arising hereunder shall be subject to, governed by and construed in accordance with the laws of the State of Kansas". Petitioner agreed with and accepted letter agreement II by signing it on August 27, 2011.

In August 2011, petitioner received and read a version of the then-current merger agreement that did not include schedules. Petitioner, however, did not consult with Richter, De Luna, Leighton, or any other tax adviser to review the merger agreement. Schedules of the merger agreement, which petitioner did not see, identified him as a deferred compensation recipient.

Again without consulting any tax adviser, petitioner signed a consent of the shareholders assenting to Zave's entering into the merger agreement. By signing the consent, petitioner agreed to be bound by the terms of the merger agreement and acknowledged that he had had an opportunity to review with his tax advisers the tax consequences of the merger and transactions contemplated by the merger agreement. However, petitioner did not sign a consent of the deferred

**[*7]** compensation recipients that was given to service providers of Zave who held stock options or warrants for Zave stock.

Petitioner did execute a Key Employee Offer Letter and Proprietary Information and Inventions Assignment Agreement (employment and assignment agreement), wherein he would become a Google employee after the merger. Petitioner would receive from Google an annual salary of $231,000 to be increased to $250,000 after his relocation, a $2.5 million bonus for staying with Google for three years, another bonus program that would pay an additional 25% of his salary, Google stock, and other benefits. As a condition of his employment with Google, petitioner would assign his rights, titles, and interests in certain Zave-related intellectual property to Google.

On September 1, 2011, Zave sent a spreadsheet to its payroll company indicating that petitioner was to receive $1,879,779.03 of deferred compensation from the merger closing. The merger closing took place on or around September 2, 2011. The total value of petitioner's stock was determined to be $787,671. As a result of the merger closing, petitioner received $3,027,515 and became an employee of Google. Of the total proceeds of $3,027,515, $360,065 was held in escrow and distributed to petitioner in a later year.

**[\*8]**  After the merger closing, petitioner received a paycheck showing "stock compensation pay" of $1,879,779.03 and, because of the tax withholdings, became aware that Zave was treating this amount as ordinary income.  Petitioner contacted Richter and Leighton, who addressed this matter with De Luna.  While his tax advisers suggested, among other things, filing a suit against Zave to recategorize the ordinary income characterization, petitioner elected not to pursue any formal legal action disputing the characterization of the $1,879,779.03.  Instead, petitioner chose to pursue the matter through correspondence.

De Luna drafted and apparently sent to Zave a demand letter dated November 14, 2011, outlining his opinion that the transaction at all times was capital in nature, but that Zave miscast it as ordinary.  In this letter, De Luna referenced the letter agreement dated August 1, 2011, because he was unaware of letter agreement II and of petitioner's execution of it.  The demand letter stated that Zave's failure to comply with petitioner's demand would result in petitioner's filing suit against Zave for breach of contract.  Additionally, the demand letter stated that petitioner would challenge the tax treatment of Zave's reporting on his Federal income tax return by providing a detailed explanation as to the egregious and erroneous position taken by Zave.  Petitioner never received any response from Zave regarding the demand letter, and he did not file any suit against Zave.

**[\*9]** Petitioner had Richter prepare his 2011 Federal tax return. On his return, petitioner reported $226,073 for wages and, with respect to the merger, long-term capital gain of $2,476,455 resulting from a sale price of $2,540,828 and a cost basis of $64,373. Petitioner reported estimated tax payments of $465,782 and withholding credits of $58,560--even though he had made no estimated tax payments for 2011 and the total amount of Federal income tax withheld from petitioner for 2011 was $524,341.25. Petitioner chose to report estimated tax payments of $465,782 as a way to reclassify the amount that he had determined as having been wrongfully withheld from the $1,879,779.03 shown on his 2011 Form W-2,Wage and Tax Statement, as stock compensation pay by Zave's payroll company.

As part of his 2011 Federal tax return, petitioner included Form 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. On Form 4852, petitioner reported amounts different from the Form W-2, including wages of $176,728 (as opposed to $2,056,501.85 on Form W-2) and Federal income tax withheld of $42,524 (as opposed to $512,305.68). He also included an attachment to Form 4852 with his explanation that the

[*10] $1,879,779.03 of "Stock Compensation" wages was actually part of the stock purchase and not compensation.

Petitioner also included letter agreement II, emphasizing from it in his explanation that: "'the company . . . will pay you (the taxpayer) an aggregate amount (the "consideration") equal to Three Million One Hundred Thousand Dollars ($3,100,000) of the Ninety-Three Million Dollar (93,000,000 [sic]) purchase price offered by Google, as adjusted in the Merger Agreement IN EXCHANGE FOR (I) ALL OF YOUR SHARES, WARRANTS, AND OPTIONS OF THE COMPANY.'" He further explained that Zave's payroll company had misclassified his stock sale by treating the proceeds as ordinary income and that he wanted the excess Federal income tax withheld to be treated as a 2011 estimated tax payment. He concluded by stating that he was including Form 843, Claim for Refund and Request for Abatement, to request a refund of overpaid Medicare taxes.

## OPINION

Petitioner maintains the position he took on his 2011 Federal tax return: that the income he received as a result of the merger represented funds derived wholly from the sale of his stock and qualifies for long-term capital gain tax treatment. Respondent acknowledges that petitioner's section 83(b) elections

[*11] permitted any subsequent appreciation in his Zave stock to be taxable as capital gain and that any gain recognized from the exchange of stock for consideration in an acquisition is capital in nature pursuant to section 302(b)(1)-(4). Respondent argues that all of petitioner's merger-based income received in 2011 and in excess of the determined value of his Zave stock is taxable as ordinary income.

Generally, the taxpayer has the burden of proving that the Commissioner's determinations in a notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner contends, however, that pursuant to sections 6201(d) and 7491(a) respondent should bear the burden of proof.

If a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party and meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative evidence, in addition to the information return, concerning the deficiency attributable to that item. Sec. 6201(d). Respondent has presented evidence, other than the information return filed by Zave, as to the character of the income in issue. We therefore are not relying on the characterization reported in that information return.

[*12] If a taxpayer produces credible evidence to support her or his position as to a factual issue, complies with substantiation requirements, and cooperates with the Secretary with regard to all reasonable requests for information, then the burden of proof as to that issue shifts to the Commissioner. Sec. 7491(a); see Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). As shown below, petitioner did not introduce credible evidence regarding the tax character of the income in issue that merited a shifting of that burden to respondent. After consideration of sections 6201(d) and 7491(a), the burden of proof remains with petitioner.

Gain from the sale of a capital asset, such as stock, may be given the preferential tax treatment of long-term capital gain if certain conditions are met. See secs. 1(h), 1221(a)(1), 1222(3). Petitioner's aim throughout the merger was to reduce his tax liability by structuring the $3,027,515 he would receive as deriving purely from a stock sale and deserving of preferential tax treatment. In general, tax reduction is an acceptable goal as long as the reduction involves transactions with substance and is by legal means. Frank Lyon Co. v. United States, 435 U.S. 561, 583-584 (1978). It does not, however, enable a taxpayer to ignore relevant information.

Petitioner chose to ignore a lot of relevant information. He did not disclose crucial information to his tax advisers, including the merger agreement and the

[*13] shareholder's consent.  He disregarded the $787,671 determined value of his stock, and he disregarded Zave's consistent position that treated the balance of the payments as compensation for services.  He apparently did not make himself aware of the merger terms between Zave and Google, which reflected the intent of the two parties that generated petitioner's income in issue--an intent that petitioner would receive both deferred compensation and capital gain income from his execution of the employment and assignment agreement and the sale of his Zave stock.  Petitioner testified that these terms were unknown to him, even though as a shareholder he had consented to be bound by them.  Failing to explain persuasively why the express terms of the merger should be ignored, petitioner instead relies heavily on his side contract with Zave, letter agreement II, even though it incorporates the merger agreement.

Petitioner argues that, through letter agreement II, he negotiated a higher share price than other shareholders and that the $3,027,515 he received was all consideration for the sale of his Zave stock.  However, petitioner has given no persuasive reason why Zave, with its postmerger funds, would be willing to pay more for his stock than its determined value.  His expressed desire for a 3% share of the company does not establish that his stock was equal in value to, or sold for, $3,027,515.  And while petitioner testified that his shares were worth a higher

**[*14]** price because Zave needed his stock to complete the merger deal, he also testified that he was a minority stockholder and his dissent essentially would not have any effect because Zave needed only a majority interest.

Moreover, letter agreement II was silent as to a specific amount being paid for the stock. Instead, it provided that to receive the merger-based income from Zave, petitioner had to fulfill two requirements: (i) he had to sell his stock; and (ii) he had to sign the employment and assignment agreement. While petitioner contends that he gave up only one asset of any worth--the Zave stock--Zave obviously considered his employment and assigns to have considerable value with respect to its merger negotiations. And petitioner undermined his own position when he testified that, if he had dissented, then the merger would most likely not have gone through, not because of his stock ownership, but because he had to "sign over all the intellectual property and sign on with Google."

Still, petitioner contends that none of the income in issue was given to him for fulfilling the second requirement because he was so well compensated-- through wages and bonuses and other benefit--by becoming a Google employee. However, his prior or future compensation does not preclude him from having been paid, in part, for his signing of the employment and assignment agreement. On its face, letter agreement II strongly suggests that petitioner's signing of the

**[\*15]** employment and assignment agreement was an imperative condition to receive the merger-based income.

Another indication that letter agreement II was not intended to memorialize a pure stock sale is its "Internal Revenue Code Compliance including I.R.C. § 409A" section. Section 409A is titled "Inclusion in Gross Income of Deferred Compensation under Nonqualified Deferred Compensation Plans." While arguing that letter agreement II is not a deferred compensation plan, petitioner fails to explain why Zave and he, with his tax advisers, negotiated letter agreement II to include a section referencing section 409A and to include language like "payment will be subject to all adjustments, tax withholdings, if any, and escrow as required in the Merger Agreement".

Petitioner also argues that Zave misclassified a portion of his merger-based income because it did not know how to handle his particular situation. The record strongly suggests that Zave did exactly what it intended. Zave and Google, not petitioner, were the negotiating parties of the merger and agreed to the schedules that listed petitioner as a deferred compensation recipient. When petitioner became aware that Zave, through the merger terms and through its payroll company, treated most of his "consideration" as deferred compensation, he did not attempt to cure Zave's alleged breach either by requiring Zave to reissue a

[*16] corrected Form W-2 or by pursuing legal recourse against Zave in accordance with the "Governing of Law and Forum" section of letter agreement II.

Instead, petitioner elected only to take "amenable" action to attempt to correct the situation. This action amounted to a single demand letter, allegedly being sent to Zave, which threatened the filing of a legal suit and the challenging of Zave's reporting through an adverse position to be taken on petitioner's tax return. In the letter, De Luna referenced the outdated letter agreement dated August 1, 2011, because petitioner had not disclosed that he had already executed letter agreement II. The demand letter received no response from Zave.

Consequently, petitioner chose to use his Federal income tax return to "undo" Zave's Federal information return, Form W-2, in an attempt to obtain preferential tax treatment. Yet in his written explanation attached to Form 4852, petitioner included only that part of letter agreement II that referred to the stock sale while omitting the section that referred to the employment and assignment agreement. Thus, petitioner obscured his true tax situation from both his tax advisers and the Internal Revenue Service.

Petitioner also claimed estimated tax payments that he never made to achieve his sought-after tax treatment. That he had to fabricate information on his return in order to get this result should have been a clear indicator that what he

**[*17]** was doing was improper.  Cf. Jenkins v. Commissioner, T.C. Memo. 2012-181 (ruling against a taxpayer whose goal was to have no taxable income and who attempted to achieve this result by self-preparing revised Forms 1099-MISC, Miscellaneous Income, and Form 1099-C, Cancellation of Debt, to reflect zero nonemployee compensation and zero cancellation of indebtedness income).

In the end, it appears that petitioner made a decision to receive his merger-based income and his position at Google without causing a stir about receiving deferred compensation.  He then used his 2011 income tax return in an attempt to "regain" his desired preferential tax treatment that he had earlier abandoned by not challenging Zave.  We cannot presume that in an agreement to pay petitioner for completing two requirements Zave actually intended for the entire amount to be paid with respect to only one of those requirements.  The preponderance of the evidence, without regard to burden of proof, is that petitioner received the value of his stock and compensation for service previously rendered or to be rendered in the future.  Accordingly, respondent's determination on this issue is sustained.

Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or a substantial understatement of income tax.

[*18] An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Because we determine that there is a substantial understatement of income tax, we need not address negligence.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. Higbee v. Commissioner, 116 T.C. at 446-447. Respondent has satisfied the burden of production by showing that there is a substantial understatement because the amount of the understatement, $369,071, exceeds 10% of the tax required to be shown on the return, $767,287, and, alternatively, is greater than $5,000.

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the penalty is inappropriate--for example, by showing that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess her or his proper tax liability. Id. While

**[*19]** reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith, such reliance can establish reasonable cause and good faith "if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner argues that he relied on professional tax advisers, namely his return preparer and tax attorneys, to ensure that the capital gain tax treatment he desired would be achieved. While his effort to achieve his desired tax treatment is evident, that is not the same thing as making an effort to assess the proper tax liability. Petitioner chose to keep from his advisers essential facts, such as the amount of stock he owned and the stock's determined value in comparison to the amount he was receiving, and essential documents, such as the executed consent of the shareholders and the initial merger agreement. It is not reasonable for petitioner to rely on his tax advisers where he had knowingly obscured the complete picture of his tax situation from them.

Additionally, the return preparer Richter--who prepared the Form 4852--did not testify. We have no evidence as to the competence and expertise of the preparer, and it appears that the preparer relied solely on petitioner's representations. Under the circumstances, petitioner is not entitled to rely on the

**[\*20]** preparer.  <u>See</u> <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. 43, 99 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002).

Moreover, misrepresenting information on Federal tax forms, as petitioner did when he reported withheld taxes as estimated tax payments, does not show good-faith effort to reach the proper tax liability.  Petitioner has failed to prove that he acted with reasonable cause and in good faith under section 6664.

We have considered the other arguments of the parties, but they are irrelevant, unsupported by the record or by authority, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.