T.C. Memo. 2018-60

UNITED STATES TAX COURT

JERRY L. KEENAN AND CYNTHIA S. KEENAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8917-09.                          Filed May 3, 2018.

Russell D. Stanaland, Ira B. Stechel, and Stefi N. George, for petitioners.

Brian E. Derdowski, Jr., and Brian J. Bilheimer, for respondent.

MEMORANDUM OPINION

COHEN, Judge:  This case is before the Court on remand from the Court of
Appeals for the Ninth Circuit to consider petitioners' motion to be relieved of a
stipulation to be bound by the final decision rendered pursuant to our opinion in
Curcio v. Commissioner, T.C. Memo. 2010-115, aff'd, 689 F.3d 217, 229 (2d Cir.
2012).  They seek relief only with respect to the portion of the stipulation by

[*2] which they agreed that the applicability of the section 6662(a) penalty would be determined in the same manner as that penalty was determined in Curcio. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

The petition in this case was filed on April 13, 2009. Petitioners were represented by the same counsel that represented numerous other taxpayers with respect to the tax consequences arising from their participation in the so-called Benistar 419 Plan. The Commissioner had determined, among other things, that payments for life insurance for the benefit of small business owners operating as S corporations, such as Jerry L. Keenan (petitioner), were not deductible as ordinary and necessary business expenses. Section 6662(a) accuracy-related penalties were also determined in the statutory notices sent to the participants in the plan. In this case the notice of deficiency for 2003 determined a deficiency of $882,936 and a section 6662(a) penalty of $176,587.20. As in the other S corporation cases, the notice of deficiency disallowed the deduction claimed by petitioners as a pass-through loss from the Form 1120S, U.S. Income Tax Return for an S Corporation,

[*3] prepared for their S corporation, Keenan Insurance Management Group, Inc., to their individual return for 2003.

After this and other Benistar 419 Plan cases were set for trial, they were continued for the purpose of selecting test cases sharing the same issues. Ultimately, four test cases were selected and were consolidated, with Curcio having the lowest docket number and therefore providing the name commonly referring to the group. On November 9, 2009, petitioners executed a stipulation to be bound by the ultimate decision in Curcio and the other test cases.

Our opinion in Curcio and the three other test cases was filed May 27, 2010, as T.C. Memo. 2010-115, and held that the promised tax benefits of the Benistar 419 Plan were not as they had been promoted to the taxpayers. We held that the contributions made by the participating companies were not ordinary and necessary business expenses deductible under section 162(a). Moreover, we held that the participants in the plan were liable for the section 6662(a) accuracy-related penalties. We rejected their claims of reliance on the tax advice of their accountants and their insurance agents. We stated:

> [T]here is no evidence that petitioners' accountants had any particular expertise in employee benefit plans or that petitioners thought their accountants had such expertise. * * * Blind reliance on the opinions of accountants given the facts of these cases is insufficient to show

**[*4]** that petitioners acted with reasonable cause and in good faith under section 6664. * * *

Curcio v. Commissioner, slip op. at 56-57.

The decisions in Curcio were entered in 2010. The taxpayers appealed to the Court of Appeals for the Second Circuit. On August 9, 2012, the Court of Appeals affirmed our decisions and specifically summarized its analysis of the taxpayers' claim of reliance on their advisers as follows:

> Petitioners argue that they relied in "good faith" on the advice of their accountants. Reliance on professional advice, however, is not, by itself, an absolute defense to negligence. * * * Indeed, there was little reason for petitioners to believe that their accountants were authorities on the tax treatment of welfare benefit plan contributions or that they had sufficiently researched the issue. The accountants * * * told them that they had solely relied on the Edwards & Angell letter [included in the promotional materials for the Benistar 419 Plan].
>
> Moreover, the record does not reflect that petitioners conducted an investigation sufficient to avail themselves of a "good faith" defense. * * * [T]he letters specifically warned that the Commissioner could disallow petitioners' deductions based on a finding that the amount of the contributions was not ordinary and necessary.

Curcio v. Commissioner, 689 F.3d at 229. The taxpayers sought Supreme Court review, which was denied on June 17, 2013.

From July 23, 2013, through December 16, 2014, this Court issued eight orders to the parties in an attempt to secure a decision in this case consistent with

**[\*5]** the stipulation to be bound and the finality of the <u>Curcio</u> decisions.  On December 12, 2014, respondent filed a motion for entry of decision, to which petitioners responded on December 22, 2014.  We granted respondent's motion and entered a decision on January 5, 2015.  We will not describe in detail those orders, the responses to them, or the current dispute between the parties as to who was responsible for the delays, because the Court of Appeals has rejected our rationale for that decision and remanded this case to allow petitioners to present their position to the Court in a meaningful way.

After our decision was vacated, petitioners filed their pending motion to be relieved from the stipulation.  We conducted an evidentiary hearing on the motion. Petitioner and two advisers on whom he relied testified.  Their testimony is described below.

### Discussion

As stated by the Court of Appeals, the parties agree that a taxpayer can be relieved from the effect of a stipulation when "manifest injustice would [otherwise] result".  <u>Bail Bonds by Marvin Nelson, Inc. v. Commissioner</u>, 820 F.2d 1543, 1547 (9th Cir. 1987), <u>aff'g</u> T.C. Memo. 1986-23; <u>see also</u> Rule 91(e). Understandably, the parties' briefs debate at length the facts of the underlying transaction and petitioners' conduct because the evidentiary hearing would serve

**[*6]** as a trial de novo if the motion to relieve petitioners of the stipulation to be bound were granted. Although there are many disputes between the parties as to the facts to be found in that event, we focus our analysis on the evidence and the applicable law to determine whether petitioners have shown that an injustice would result from enforcing the stipulation. To do so, they would have to demonstrate that their claim of reasonable reliance on qualified advisers was materially superior to that of the taxpayers described in Curcio. Petitioners attempt to avoid application of the Curcio holdings by arguing that they conducted "extraordinary due diligence" and are "unique" in contrast to the Curcio taxpayers.

Petitioners' Evidence

Petitioner testified that he did not graduate from high school or attend college and had no tax background. As of 2004, he had owned his business selling insurance for over 30 years. Although he was licensed to sell life insurance, his emphasis was on property and casualty insurance.

Bernard Bunning, petitioner's accountant, first approached petitioner about the Benistar 419 Plan in 2003. Petitioner also discussed the plan with Christopher Ewing, a lawyer and licensed life insurance salesman, who did estate planning for petitioner. Petitioner was interested in life insurance because he had health

**[*7]** problems that he assumed would make it difficult to purchase policies.  He did not seek life insurance through any other sources.

Petitioner did not do any research on deductibility of payments to a section 419 plan.  He discussed it with Bunning and Ewing, and they discussed it between themselves.  Petitioner and Ewing agreed that Ewing would be paid commissions as a life insurance salesman if he acquired the plan and would not be paid his regular fees for tax planning services.  Petitioner participated in meetings with Bunning, Ewing, and unidentified persons associated with Benistar, but he relied on the advice of Bunning and Ewing in making his decision to adopt a section 419 plan.

On cross-examination of petitioner, the following occurred:

Q      Before you sign your tax returns generally, do you review them?

A      No.

Q      In other words, do you look at them?

A      No.

Q      No?

A      No.

Q      Not at all?

**[\*8]**   A   No.

Q   Now in 2003, you've done something a little out of the ordinary –

A   Uh-huh.

Q   -- in that the Benistar deduction wasn't something that you had taken before --

A   Right.

Q   -- was it?  You weren't curious to see how it was posted on your 1120S?

A   No.

Q   Did you have any discussions with Mr. Bunning about how he deducted the Benistar plan contribution on your 1120S?

A   No.

Referring specifically to the Form 1120S, the colloquy continued:

Q   There's a deduction of $3,060,000 for employee benefits identified in statement 3.

A   Okay.

Q   Did you have a discussion with Bernard Bunning about this deduction?

A   No.

Q   Could this deduction for employee benefits of 3,060,000 thousand [sic] be something other than a Benistar 419 plan?

**[*9]**       A       No.

Petitioner acknowledged payments for the Benistar 419 Plan of $1 million in 2003 and $1,460,000 in 2004 and could not explain the difference between the $3,060,000 deducted on the 2003 return and the total paid in 2003 and 2004.

Also on cross-examination, petitioner stated that he first met Ewing in 2003. He testified:

> Q       Okay.  But had you done business with Mr. Ewing before he was brought in to help with estate planning and the 419 plan?
>
> A       Not that I can remember.
>
> Q       Okay.  So you had no special reason to trust Mr. Ewing's judgment at that time aside from his credentials as an attorney and as a life insurance agent?
>
> A       Well, as an attorney.  His life insurance, I didn't know what his experience was or anything.
>
> Q       And why did you work with Christopher Ewing to get into the 419 plan rather than some other life insurance agent?
>
> A       Because Bernard Bunning introduce[d] me to Chris Ewing.
>
> Q       Okay.
>
> A       And he was doing the estate's planning.
>
> Q       Now, what was your understanding of Mr. Bunning's experience with 419 plans?

**[*10]**      A      Well, he -- he was -- he was a tax CPA. He seemed to have had a lot of years in the business. He's handled a lot of businesses in Sacramento and the area and everything. He had a great reputation. And he seemed to know everything that -- that helped me run my companies.

      Q      Aside from Mr. Bunning being a veteran CPA and a partner in a tax preparation firm, did he present himself as having any special expertise in the area of 419 welfare benefit plans or the related tax laws for that subset of transaction?

      A      No.

Petitioner was asked and answered:

      Q      Before you signed up in the arrangement, were you given the plan document, or summary plan description, or other explanatory material about the Benistar plan?

      A      If I did, I didn't read them.

              *      *      *      *      *      *      *

      Q      Did Mr. Bunning present any other different 419 transactions, other welfare benefit plans, or other ways of achieving your objectives other than the Benistar plan?

      A      I believe he had discussed other ones, but they were discounted for some reason. I don't know why.

      Q      Did he talk to you about the pros and cons of your alternatives?

      A      Not in depth by any means, no.

      Q      And did Mr. Ewing do that?

**[*11]**     A     Not that I can remember.

Bunning testified about preparation of the Form 1120S.  He discussed the deductibility of the Benistar 419 Plan payments with petitioner, but he did not discuss where the deduction was placed on the return.  Bunning acknowledged that the over $3 million deduction claimed was not shown as an employee benefit on the return but was shown as a cost of goods sold.  He testified:

> Q     Was he worried about being audited?
>
> A     I think we all feared that a $3,000 [sic] deduction on a tax return with revenues of $6,000,000, a fifty percent deduction, there was a high likelihood that the return would be audited.  I mean, that was always a –
>
> THE COURT     3 million.
>
> A     Pardon?
>
> THE COURT     You said 3,000.
>
> THE WITNESS     Oh, I mean 3 million.  That's always -- you know what?  That's always in your -- you know, to be honest, that would always be in my mind for any client.

Ewing did not claim any expertise with respect to section 419 or 419A although he was licensed as a life insurance salesman qualified to evaluate alternative life insurance programs.  Ewing testified that he conducted due diligence as he described in a letter dated May 24, 2007, apparently after the dispute about the

**[\*12]** deductibility of the Benistar 419 Plan payments arose. Ewing's letter attached 11 exhibits, most of which consisted of Benistar 419 Plan promotional materials. The record is devoid of any contemporaneous documentary evidence that Ewing conducted or provided to petitioner such detailed analysis in 2003 before recommending that petitioner participate in the Benistar 419 Plan. In any event, as noted by the Court of Appeals for the Second Circuit, quoted above, the Benistar 419 Plan promotional materials included warnings that the benefits claimed might be disallowed by the Commissioner.

Section 6662(a) Penalties

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose a penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate. Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or to a substantial understatement of income

[*13] tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. See sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Negligence is the lack of due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985) (citing Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964), and aff'g in part, and remanding in part T.C. Memo. 1964-299). Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. See sec. 1.6662-3(b)(2), Income Tax Regs.

Except in cases involving tax shelters, an understatement can be reduced by the portion of the understatement that is attributable to the tax treatment of an item that is supported by substantial authority or for which there is a reasonable basis and adequate disclosure. See sec. 6662(d)(2)(B) and (C). Moreover, the section 6662(a) penalty will not be imposed with respect to any portion of the underpayment with respect to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); see also Higbee v. Commissioner, 116 T.C. at 448.

[*14] Authority, for purposes of determining whether there is substantial authority for a taxpayer's treatment of an item, includes the Code, regulations, caselaw, and certain IRS administrative pronouncements. Sec. 1.6662-4(d)(3)(iii), Income Tax Regs. In evaluating whether a taxpayer's position regarding treatment of a particular item is supported by substantial authority, the weight of authorities in support of the taxpayer's position must be substantial in relation to the weight of authorities supporting contrary positions. Id. subdiv. (i). The substantial authority standard is objective, and the taxpayer's belief that there is substantial authority for her or his position is irrelevant in determining whether there is substantial authority. See id.

Petitioners assert a substantial authority defense. As we discussed in Curcio, there is no supporting substantial authority for petitioners' tax treatment of the Benistar 419 Plan, and we see no reason why their position is any different or shows any distinction from the position that we rejected in Curcio. They have shown no injustice with respect to that question.

Petitioners also argue that their position was adequately disclosed on the return. We reject that argument because the deduction of over $3 million was mislabeled in the return as costs of goods sold, was not disclosed as called for on the form and return instructions, and was reported by a cash basis taxpayer who

[*15] had paid only $1 million as of the end of the taxable year.  Moreover, Bunning made clear that the purpose of that treatment was to minimize the chance of an audit.  Although he attempted to rationalize his justification for burying the deduction, the effect was nondisclosure.  There is no injustice in declining to accept that claimed defense.

Petitioners' primary contention in their motion to be relieved of the stipulation is that they have distinguishing and superior facts concerning reasonable cause and were unaware of the facts concerning the Curcio taxpayers when they executed the stipulation.  The testimony fails to support their claim.

The determination of whether a taxpayer acted with reasonable cause is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner's testimony fails to demonstrate that he acted with reasonable cause and in good faith.  "The most important factor is the extent of the taxpayer's effort to assess his [or her] proper liability in light of all the circumstances."  Brinkley v. Commissioner, 808 F.3d 657, 669 (5th Cir. 2015) (quoting Klamath Strategic Inv. Fund v. United States, 568 F.3d 537, 548 (5th Cir. 2009) (affirming section 1.6664-4(b)(1), Income Tax Regs.)), aff'g T.C. Memo. 2014-227.  We examine this factor along with

**[\*16]** [a]dditional "[c]ircumstances that may indicate reasonable cause and good faith[, which] include [(1)] an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer," Treas. Reg. § 1.6664-4(b), and (2) reliance on the advice of a professional tax advisor "if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith," id.; Reser v. Commissioner, 112 F.3d 1258, 1271 (5th Cir. 1997).

Stanford v. Commissioner, 152 F.3d 450, 461 (5th Cir. 1998) (third alteration added), aff'g in part, vacating in part 108 T.C. 344 (1997); see also DJB Holding Corp.v. Commissioner, 803 F.3d 1014, 1030-1031 (9th Cir. 2015), aff'g WB Acquistion, Inc. v. Commissioner, T.C. Memo. 2011-36; Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Petitioner testified that he did not review the Benistar 419 Plan promotional materials and did not read his tax returns. Instead he blindly delegated responsibility to Bunning and Ewing. Petitioners have not shown any genuine attempt to assess their proper Federal tax liabilities for the years in issue.

We cannot conclude that petitioner's claimed reliance on Bunning and Ewing was reasonable and in good faith. Petitioner failed to make any real effort to determine the deductibility of $3,060,000 in relation to the Benistar 419 Plan in view of the $1 million he had paid in 2003. Bunning relied on Benistar 419 Plan promotional materials. Ewing had no special expertise with respect to the subject

[*17] matter of section 419, he received compensation based on petitioner's purchase of the life insurance, and he relied heavily on promotional materials that warned that the Commissioner might disallow the deductions related to the Benistar 419 Plan. Petitioners' defense to the section 6662 penalty is no better than that of the taxpayers in the Curcio group of cases. The participants in the Benistar 419 Plan are similarly situated in all material respects. There is no injustice in holding petitioners to the stipulation to be bound.

We have considered the other arguments of the parties, and they are irrelevant to the remand or otherwise unnecessary to address. To reflect the foregoing, petitioners' motion to be relieved of the stipulation to be bound will be denied, and the decision consistent with the Curcio cases will be reentered.

An appropriate order and

decision will be entered.